Edward J. ROSS and Francis K. Teplitz, as Executors of the Estate of Samuel L. Kahn, Deceased, and Myron K. Wilson and Joseph Walker, as Executors of the Estate of Henry Kahn, Deceased, Plaintiffs,

v.

The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Defendant and Third-Party Plaintiff,

v.

Paul R. SLAYTON, Third-Party Defendant.

No. 77 Civ. 1058 (LFM).

United States District Court, S. D. New York.

March 22, 1978.

Finley, Kumble, Wagner, Heine & Underberg by James E. Merriman, New York City, for defendant and third-party plaintiff.

Breed, Abbott & Morgan by Edward J. Ross, New York City, for plaintiffs.

## OPINION

MacMAHON, District Judge.

Defendant, The Great Atlantic & Pacific Tea Company, Inc. ("A&P"), moves to disqualify the firm of Breed, Abbott & Morgan and Edward J. Ross, Esq., a member of that firm, from continuing to represent plaintiffs in this action. Mr. Ross is a named plaintiff and an able and experienced member of the trial bar of this court.[1]

This diversity action seeks damages for the breach of a lease covering a commercial building owned by plaintiffs and leased to defendant for a renewed term commencing August 1, 1968 and ending July 31, 1975. Defendant allegedly vacated the premises in March 1974 and neglected to secure them, resulting in damages due to vandalism. Further, the building was damaged by fire on March 9, 1975, and no rent was paid from March 1, 1975 through July 31, 1975, the end of the term. Ultimately, the building was surrendered in a damaged condition.

The complaint alleges damages in the amount of $210,606.65 for unpaid rent and loss of rental value, damages to the premises which took place both prior to and after the expiration of the lease term, and expenses incurred in maintaining the building. Defendant filed a third-party complaint against Paul R. Slayton, to whom defendant had assigned the lease when the premises were initially vacated.

Prior to the institution of this action, plaintiffs, including Mr. Ross,[2] brought an action against the building's insurer seeking

---

1. Mr. Ross is one of four named plaintiffs. Mr. Ross and plaintiff Francis K. Teplitz are co-executors of the estate of Samuel L. Kahn, deceased, while plaintiffs Myron K. Wilson and Joseph Walker are co-executors of the estate of Henry Kahn, deceased. Mr. Ross' three children and two nephews are the beneficial owners of the estates' property.

2. Since the record does not inform us to the contrary, we shall assume that all plaintiffs in this case were parties to the suit against the insurer.

$70,000 for fire damage, $10,666 for unpaid rent, and $125,000 for continued deterioration and inability to sell or re-let the premises. These claims were settled for $15,000, and the plaintiffs now take the position that this amount, less expenses, should be allocated exclusively to fire damage.

Defendant seeks to disqualify Mr. Ross and his firm under Canon 5 of the Code of Professional Responsibility (the "Code"), and Disciplinary Rule ("D.R.") 5–102(A)[3] and (B)[4] thereunder. It is defendant's position that Mr. Ross "ought to be . . . a witness on behalf of his client" and thus should be disqualified under D.R. 5–102(A). Alternatively, defendant insists that it will call Mr. Ross as a witness and elicit testimony prejudicial to plaintiffs, thus warranting disqualification under D.R. 5–102(B).

## I.

■ We hold D.R. 5–102(A) inapplicable. Although Mr. Ross is familiar with the circumstances surrounding plaintiffs' claim, plaintiffs' prima facie case can readily be presented through documents and the testimony of other witnesses who have first hand knowledge of the facts. Thus, plaintiffs will call Robert G. See, the A&P Real Estate Director in charge of the premises, who will testify concerning the defendant's alleged failure to secure the building after vacating. Other A&P maintenance employees will testify about the nature and the extent of the damages to the demised property. Further, plaintiffs will examine certain expert witnesses in the construction and engineering fields about the amount of the damage and its allocation between vandalism and fire. Finally, various admissions of defendant will be introduced through letters and other documents. In short, we fail to see how Mr. Ross' testimony is at all required in plaintiffs' direct case. We therefore conclude that this is not a case in which Mr. Ross ought to be a witness on behalf of his client. See *Kroungold v. Triester*, 521 F.2d 763, 766 (3d Cir. 1975).

## II.

■ The impact of D.R. 5–102(B), however, presents a more difficult question. Under that rule, the party seeking disqualification must show that the testimony to be elicited from his adversary will be prejudicial to the latter's client. To disqualify an attorney on any lesser showing would sanction an intolerable tactic whereby an attorney could disqualify his adversary merely by calling him to the witness stand. *Kroungold v. Triester, supra*, 521 F.2d at 766.

Defendant intends to examine Mr. Ross concerning the latter's alleged failure to mitigate plaintiffs' damages by repairing, re-letting or selling the premises upon surrender of the property. However, after careful *in camera* inspection of Mr. Ross' deposition, taken by defendant, we fail to perceive how Mr. Ross' testimony will be prejudicial to plaintiffs on this issue. Defendant's motion papers enlighten us no further, making only the most conclusory allegations that the testimony will indeed be prejudicial. In this circumstance, we conclude that Mr. Ross' testimony on the issue of mitigation of damages will not be prejudicial to plaintiffs, so that disqualification is not warranted under D.R. 5–102(B), even if Mr. Ross were to be called as a witness for the defendant.

## III.

Our inquiry is not at an end, however, for defendant also intends to examine Mr. Ross

---

**3.** In pertinent part, D.R. 5–102(A) provides:
"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial. . . ."

**4.** D.R. 5–102(B) provides:
"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

about the extent of the fire damage caused by the March 9, 1975 fire. Since the lease exempts defendant from liability for fire damage,[5] the jury will have to determine the amount of damage attributable to the fire. Obviously, the defendant will attempt to set that figure as high as possible. Defendant will therefore seek to elicit from Mr. Ross the fact that Mr. Ross, at the time of the earlier suit against the building's insurer, set the fire damage at the rather high figure of $70,000. Such testimony, admissible as an admission of party opponents, see Rule 801(d)(1), Fed.R.Evid., will be prejudicial to plaintiffs, since it directly contradicts their instant position that fire damage amounts to less than $15,000.[6]

This showing of prejudice literally satisfies D.R. 5–102(B). The Disciplinary Rules, however, are not per se mandates calling for literal application. *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293 (2d Cir. 1975); *J. P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359–60 (2d Cir. 1975) (Gurfein, J., concurring). On the contrary, even where a Disciplinary Rule is by its terms applicable, we must examine the facts of a claimed violation of the Code and attempt to shape a remedy which will assure fairness to the parties and integrity to the judicial process. *Greenbaum-Mountain Mortgage Co. v. Pioneer Nat'l Title Ins.,* 421 F.Supp. 1348, 1352–53 (D.Colo.1976); *United States ex rel. Sheldon Electric Co. v. Blackhawk Heating & Plumbing Co.,* 423 F.Supp. 486, 489 (S.D.N.Y.1976). Disqualification is a drastic step which should be avoided if possible.

We note at the outset the relevant considerations which lie in the balance. The defendant is, of course, entitled to introduce the strongest evidence available in support of its position and, generally, to do so in the manner of its own choosing. On the other hand, the plaintiffs have an interest in retaining the services of the counsel of their choice. *Government of India v.*

*Cook Industries, Inc.,* 569 F.2d 737, at 739, (2d Cir. 1978). Here, this interest is particularly compelling, in light of the long and faithful services Mr. Ross has rendered to the estates, as well as the familial relationship between counsel and the beneficial owners of the estate property. Cf. D.R. 5–101(B)(4) (providing an exception to D.R. 5–102(B) where disqualification would "work a substantial hardship . . . because of the distinctive value of the lawyer . . . in the particular case"). Finally, overriding these other interests is the public interest in providing fair but speedy trials in a congested urban court.

After careful examination, we conclude that these potentially conflicting interests can be accommodated in this case by remedial steps short of disqualification. The defendant can readily introduce the substance of plaintiffs' $70,000 admission without the testimony of Mr. Ross. For example, the defendant might place before the jury the complaint drafted by Mr. Ross in the earlier action. Or, defendant might call to the stand the representatives of Goldstein Affiliates, the firm which provided Mr. Ross with the $70,000 figure. See Ross deposition at 93–99.

Indeed, defendant's proofs on this point might well be at their strongest without calling Mr. Ross as a witness. Once on the stand, Mr. Ross would be permitted to explain the $70,000 figure as a hasty error, a preliminary estimate, a safe maneuver or a trading makeweight of the kind usually found in initial claims, particularly those against haggling insurance companies. Since defendant can easily introduce the plaintiffs' admissions without directly eliciting prejudicial testimony from Mr. Ross, and since the benefit of Mr. Ross' testimony to defendant is indeed questionable, see *W.T. Grant Co. v. Haines,* 531 F.2d 671, 677 (2d Cir. 1976), we see no compelling reason to disqualify Mr. Ross.

A refusal to disqualify Mr. Ross also vindicates the other interests relevant in this

---

5. The parties dispute whether the lease does indeed exempt defendant from liability for fire damage. For purposes of this motion, however, we assume that defendant is so exempted.

6. Since all plaintiffs here were parties to the suit against the insurer, see Note 2 *supra,* the allegations in the complaint in that suit are admissible here against all plaintiffs.

case. Such a refusal guarantees plaintiffs their valued right to counsel of their choice, a right of which we must be particularly solicitous. *Government of India v. Cook Industries, Inc., supra,* 569 F.2d at 739. We are not unmindful, moreover, that a motion to disqualify opposing counsel is frequently a litigation tactic designed to impose upon an adversary the additional burden of hiring and compensating a new and unfamiliar attorney. See *J.P. Foley & Co. v. Vanderbilt, supra,* 523 F.2d at 1360 (Gurfein, J., concurring). Our suspicions in this regard are perhaps confirmed here, since the motion to disqualify has been made only on the eve of trial[7] and since the defendant's case would not be appreciably strengthened by the testimony of opposing counsel. Cf. *W.T. Grant Co. v. Haines, supra,* 531 F.2d at 677. A refusal to disqualify Mr. Ross thus has the added virtue of denying to the defendant the illegitimate tactical advantage it would otherwise enjoy were we to apply literally the teachings of D.R. 5–102(B).

Finally, we note that a refusal to disqualify Mr. Ross assures the court the services of a competent attorney who is already prepared to try this case. A long line of litigants waits behind these parties for their day in court. To require plaintiffs to retain new counsel at this late date would delay trial of this action and operate toward clogging the calendar of this busy court. See *W.T. Grant Co. v. Haines, supra,* 531 F.2d at 677–78. We therefore refuse to disqualify Mr. Ross on the facts presented here.

Accordingly, defendant's motion to disqualify the firm of Breed, Abbott & Morgan and Edward J. Ross, Esq. is denied.

So ordered.

---

**7.** We are aware, of course, that laches is no defense to a motion to disqualify, insofar as the motion seeks to vindicate the public interest in the enforcement of the Code. See *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir. 1973). Nevertheless, we may consider the movant's delay in gauging the tactical motivations behind the motion, as well as the hardship which would attend our granting the motion at this late date. Cf. *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir. 1975) (Gurfein, J., concurring).