Robin J. FREEMAN and Vision
Engineering Ltd.

v.

KULICKE & SOFFA INDUSTRIES, INC.
and Vision Systems, Inc.

Civ. A. No. 75–3402.

United States District Court,
E. D. Pennsylvania.

May 2, 1978.

Scudder G Stevens, Philadelphia, Pa., for plaintiffs.

Charles J. Bloom, Philadelphia, Pa., Robert M. Stengel, Doylestown, Pa., for Kulicke & Soffa.

Arthur E. Dennis, Philadelphia, Pa., for Vision Systems, Inc.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff Vision Engineering Ltd. ("VEL") and defendant Kulicke and Soffa Industries, Inc. ("K & S"), in 1973 formed a corporation, defendant Vision Systems, Inc. ("VSI"), for the purpose of manufacturing microscopes. VSI entered into voluntary bankruptcy in June 1975, and six months later plaintiffs Freeman, the principal shareholder and chief executive officer of VEL and VEL filed this suit, alleging *inter alia* that K & S breached its contractual and fiduciary duties to plaintiffs. Plaintiffs have moved to disqualify trial counsel for defendant K & S,[1] the law firm of Pepper, Hamilton & Scheetz and a partner and an associate of that firm, on the ground that Allison F. Page, another partner in that firm, was involved in the transactions giving rise to this litigation and that the plaintiffs will call Page as a witness, at which time his testimony will or may be prejudicial to the case of K & S.

## I. LEGAL STANDARD FOR DISQUALIFICATION:

Plaintiffs place principal reliance on Canon 5 of the American Bar Association's Code of Professional Responsibility, adopted as the standards of conduct under Local Rule 11 of the United States District Court for the Eastern District of Pennsylvania, and Disciplinary Rule 5–102(B) promulgated under the canon. Canon 5 mandates, "A lawyer should exercise independent professional judgment on behalf of a client," and DR 5–102(B) provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client,

---

1. The other defendant, VSI, was adjudicated bankrupt on December 4, 1975, and is not involved in the instant motion.

he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

Plaintiffs contend that K & S's trial counsel must terminate their representation in this case because it is apparent that Page's testimony, based upon his deposition taken by plaintiffs and other evidence obtained through discovery, will be or may be prejudicial to K & S. This motion raises the legal issues of the meanings of "is or may be" and "prejudicial" in DR 5–102(B) under the circumstances of this case.

### A. "Prejudicial" Testimony.

■ DR 5–102(B) prescribes standards of conduct for a lawyer in a situation in which the lawyer (or a member of his or her firm) would give testimony adverse to the client's case. The concern of the Rule is that in such a situation the trial counsel might be inhibited from attacking the credibility or arguing to the fact-finder the lack of credibility of his or her own or a partner's testimony, thereby restricting his or her independent professional judgment. We think the policy underlying the disciplinary rule gives rise to the test of what is "prejudicial": the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.

K & S maintains that the standard of prejudice applicable under DR 5–102(B) is whether the testimony in question would taint the overall fairness of the trial. Defendant's Brief at 6–7. Defendants cite for that proposition *Greenebaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348, 1353 (D.Colo. 1976), *citing W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976). While the effect of an alleged breach of this disciplinary rule on the litigation generally is doubtlessly relevant to a motion to disqualify, we do not believe this to be the control-

ling test. We know of no case discussing DR 5–102(B) in which the court focused its inquiry on the impact of alleged misconduct upon the trial generally. An adverse effect of a lawyer's or partner's testimony on any material and disputed aspect of a client's case would be sufficient to constitute prejudice under this disciplinary rule.

■ K & S also suggests that the prejudice must be great to justify disqualification, on the authority of *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530, 539 n. 21 (3d Cir. 1976), where the court concluded that the language of DR 5–101 and DR 5–102(A) suggests that these sections "were concerned only with the lawyer-witness who has crucial information in his possession which must be divulged." Defendant's Brief at 6. That conclusion does not apply to the very different structure and policy of DR 5–102(B). We agree with K & S, however, that disqualification under DR 5–102(B) requires that the prejudice which would or might result from the testimony be more than *de minimis*—that is, that it be substantial enough that an independent lawyer might seek to cross-examine the witness and/or to question his or her credibility.

This limiting construction is drawn from the overall policy of the rule and from note 31 to Canon 5, which notes that the canon "was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel," Canon 5 n. 31, *quoting Galarowicz v. Ward*, 119 Utah 611, 620, 230 P.2d 576, 580 (1951). It follows from this concern that the spirit of the canon would not be advanced were a lawyer permitted to project that he would call opposing counsel's partner as a witness, to get him to testify in a way that confirms his own witness's testimony or conflicts with his partner's client's witnesses on a point that is not disputed or is totally insignificant, and to disqualify counsel on that basis.[2] We reject, consequently, a literal in-

2. A rule imposing general limitations on the availability of disqualification is the only prac-

tical approach we can perceive which will guard against abuse of these motions as tacti-

terpretation of "prejudicial" in the disciplinary rule. *See J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975). The testimony need not be absolutely crucial for a disqualification motion to be granted, but neither can it be so insignificant that it raises suspicions that the motion is a tactical artifice or that it does not violate the policy underlying Canon 5, full independence of lawyers in the service of clients.

Such a limiting construction of DR 5–102(B) seems particularly appropriate where, as here, the motion is made long after the suit was brought, shortly before trial is scheduled to begin and near the close of discovery. Under such circumstances, granting the motion would impose considerable expense and hardship upon the client of disqualified counsel; consequently, a court must be sensitive to the possibility that the motion is tactically motivated. Furthermore, when much discovery has been taken, the movant ought to be in a position to make out potential prejudice that is specific and material rather than vague and incidental if the concern about counsel's non-independence is a legitimate one.

### B.  Probability of Prejudice.

■ For similar reasons, we believe that a limiting construction must be applied to the language "is or may be" in the disciplinary rule. The spirit of the rule will not be served if a movant's assertion that the testimony of his opponent (or opponent's partner) may be or will be prejudicial is sufficient grounds for disqualification. Rather, the moving party bears the burden of demonstrating the likelihood that prejudice will or might result. The Third Circuit has recognized the insufficiency in a motion to disqualify under DR 5–102(B) of a mere

allegation that the testimony of opposing counsel's partner, if called, *may* prejudice opposing counsel's client. *Kroungold v. Triester*, 521 F.2d 763, 766 (3d Cir. 1975).[3] Where the contention of the movant that prejudice will or may result from the testimony of counsel or a partner is rebutted by an assertion of opposing counsel that that testimony will not or may not be prejudicial, the movant's assertion is not sufficient grounds for disqualification, at least where the motion is made long after the initiation of discovery and shortly before trial. We believe that the moving party bears the burden of demonstrating specifically how and as to what issues in the case the prejudice will occur and that the likelihood of prejudice occurring is substantial.

### II.  PLAINTIFFS' CLAIMS UNDER DR 5–102(B):

■ Plaintiffs have advanced a number of arguments concerning the prejudice to defendants which would result from the testimony of Page, who was at one time counsel for both VSI and K & S. We note preliminarily that the ground for this motion is not the ethics or propriety of Page's conduct; rather, it is the adverse affect that his projected testimony would have on K & S's case which is relevant to the motion. In a motion such as this, where plaintiffs have deposed Page for three days, we require such prejudice to be demonstrated by pointing to deposition testimony which corroborates plaintiffs' claims and undercuts K & S as to disputed issues of fact. Since plaintiffs have not made out the likelihood of *any* prejudice to K & S's case on the basis of Page's testimony, we conclude that they have not met their burden as movants whose assertions of prejudice have been rebutted.

---

cal weapons. Obviously, it would not be fruitful in most instances to inquire directly into the movant's motivations.

3. That case might be read to suggest that a movant's bare contention that counsel's testimony *will be* prejudicial to his or her client's case and specification of the respect in which that testimony will be prejudicial is sufficient

grounds for disqualification. Such a standard might make sense in a case such as *Kroungold v. Triester*, where the motion for disqualification was made by defendants before answering the amended complaint and apparently before any discovery was undertaken, but it would not be appropriate in the case at bar, in light of the timing of this motion.

Because of plaintiffs' failure of proof, this case is on this record essentially like *Kroungold v. Triester*. There the defendants claimed that they would call a partner of the plaintiffs' counsel and that they would ask him questions whose answers may have prejudiced the plaintiffs; the plaintiffs argued that there would be no such prejudice resulting from the partner's testimony. Under those circumstances—basically a disagreement as to whether the testimony may have been prejudicial—the trial court denied the motion to disqualify counsel, and the Third Circuit affirmed. Our case is similar in that plaintiffs have not successfully "specif[ied] in what respect [Page's] testimony 'may prejudice his client'". 521 F.2d at 766. By our standard—or any other test which would protect the integrity of this disciplinary rule—plaintiffs have therefore failed to meet their burden.

### A. Page's "one-sided service for the benefit of defendants".

Plaintiffs maintain that Page's role as counsel at the same time for both K & S and VSI generally "opens his testimony to serious questions of credibility, in light of the law relative to the duty joint venturers owe one another." Plaintiffs' Brief at 5. Plaintiffs would have us conclude that the role played by Page in these transactions *per se* opens Page's credibility to questions, and that such questions provide a basis for disqualification. To the contrary, it is *prejudice* and not doubts as to credibility *per se* which is ground for disqualification; doubts as to credibility are relevant under DR 5–102(B) only insofar as plaintiffs can demonstrate that Page's testimony would favor their case and oppose K & S and hence that K & S's counsel might be inhibited by his partnership with Page from impeaching that credibility. That opposition has not been specifically described.

Moreover, even the contention that Page's credibility as a general matter is doubtful is baldly asserted. From our knowledge of the case, it does not follow from Page's alleged role in the history of VSI that his testimony would adversely affect K & S. We must look therefore to the specific instances of prejudice to defendants forecast by the plaintiffs in their motion. We do note as a general matter, though, that plaintiffs' description of Page's role suggests in large part that his testimony would *benefit* rather than prejudice K & S and that it would be *plaintiffs* who might seek to impeach that pro-K & S testimony.

### B. Involvement in moving the inventory of VSI.

Donald Caparro, a K & S and former VSI officer, stated in his deposition that he, K & S president Frederick W. Kulicke, Jr., and Page discussed moving the inventory of VSI. Plaintiffs assert that they will show that the moving of inventory was planned and that this showing is a part of their case against K & S. Plaintiffs' Brief at 6. We are left to speculate as to what Page's testimony as to these discussions would be. He might deny that any such discussions ever took place, which testimony apparently would in no way be prejudicial to K & S; or K & S might not contest that such discussions took place, in which case any testimony by Page would not be "prejudicial" to defendants. Even if plaintiffs are correct in their statement that the existence of such discussions would be prejudicial to K & S and in their speculation that Page would testify as to these discussions, we do not see that Page's testimony would be anything other than corroborative of that of Caparro and of Martin Weiss, K & S's executive vice-president, whom plaintiffs represent would testify as would Caparro. *Id.* Unless defendants chose to seek to impeach the credibility of Caparro and Weiss and to offer contrary evidence as to the existence of these discussions, Page's testimony as to the same discussions would be neither necessary nor helpful to the fact-finder.

### C. Letter to creditors of VSI.

Plaintiffs allege that Page and Weiss discussed the advisability of issuing a letter to creditors and reviewed a draft of such a letter. *Id.* at 6–7. This contention

is analogous to the previous one. We do not know what Page would say about such a letter, what other witnesses would say about such a letter or whether K & S's counsel, if independent of Page, might have any motivation to contest any of the testimony of Page or of others.

### D. Preparation of the shareholders' derivative action.

On this point we are not even certain as to what plaintiffs' reasoning is. They assert that Page worked with Weiss with regard to itemizing the damages claimed by K & S in a derivative suit against Freeman. *Id.* at 7–8. How this activity will be or might be prejudicial at trial is not specified by plaintiffs— except to say that they consider "significant the fiduciary duty owed by joint venturers to one another" and the alleged "ethical conflict of loyalty by Mr. Page in representing both parties [K & S and VSI] while preparing for litigation by one against the other." *Id.* at 8. Apparently, plaintiffs are asserting that Page would testify concerning the bringing of the derivative suit in a way that would make out plaintiffs' contention that that suit was brought in breach of the fiduciary duty owed by K & S to plaintiffs and hence be prejudicial to that defendant. Such testimony and the nature of its adverse effect on K & S's case are unspecified, however.

### E. Resignation of Page.

Plaintiffs claim the following: Page resigned by giving oral notice to Caparro, he never confirmed his resignation in writing to Caparro, and he did not communicate the resignation to Freeman until much later. Once more, it is asserted that "serious questions as to Mr. Page's behavior" are raised. *Id.* at 9. We are not convinced that this is the case, but more importantly we do not see how such questions are relevant to this litigation.

### F. Circumstances of Freeman's becoming president of VSI.

Plaintiffs' most complete exposition of prejudice concerns an alleged disparity between Page's deposition testimony and defendants' pleadings on this subject. This is the only area addressed by plaintiffs where they cite particular examples of what Page's testimony would be (based on his deposition) and explain how defendants would be prejudiced by that testimony. We believe that plaintiffs have failed to show a substantial likelihood of prejudice.

K & S has averred in ¶ 61 of its Answer and Counterclaim that:

> "In furtherance of the scheme and artifice to defraud K & S, Freeman caused the Board of Directors of VSI to elect him president of VSI in January, 1974."

Page testified in his deposition that, as plaintiffs characterize it, the negotiations between Freeman and Kulicke as to the presidency of VSI were hard-fought but friendly and demonstrated apparent concern on both sides for the well-being of VSI. *Id.* at 10.

Plaintiffs claim that the averment of ¶ 61 and the Page deposition are in "direct contradiction". We disagree. The former alleges that Freeman caused his election of VSI *in furtherance* of his scheme to defraud K & S; it does not aver that his election was itself accomplished fraudulently. Page's deposition testimony is entirely consistent with the allegation that Freeman caused himself to be made president, and it neither corroborates nor contradicts the averment that this causation was part of a scheme or artifice to defraud. Deposition of Allison F. Page, January 12, 1978, at 156–58. Just as an act done in furtherance of a conspiracy may itself be criminal only insofar as it advances that conspiracy, so is it quite possible for an inherently legitimate act to further a fraudulent scheme. Moreover, plaintiffs have pointed to no other testimony or other elements of K & S's case which are inconsistent with this interpretation.

### G. Page and the joint venture issue.

Plaintiffs contend that VSI was a joint venture between VEL and K & S, and K & S takes the position that despite its use of the term "joint venture" in pleadings and

papers filed in this case VSI did not have the legal status of a joint venture. Defendant's Brief in Support of Motion for Leave to Amend Pleadings, filed February 23, 1978, at 2. In the instant motion plaintiffs point out that a licensing agreement between plaintiffs and VSI referring to the letter as a "joint venture" was prepared in large part by Page and/or his firm. Plaintiff's Reply Brief at 15 and Exhibit N thereof. The argument that Page's testimony consequently will be prejudicial to K & S is superficially appealing but is ultimately defective. It is the document itself, not Page's testimony, which stands opposed to K & S's claim that VSI was not a joint venture. We have not the slightest indication as to how Page's testimony might affect the meaning of that document or the fact-finder's understanding of the relationship between VEL and K & S.

### H. Defendants' contentions: timing of motion and waiver by client.

■ K & S claims that two factors in this litigation militate against the granting of plaintiffs' motion. First, it contends that the timing of the motion in the litigation raises doubts as to whether plaintiffs filed the motion in an attempt to seek a tactical advantage. Defendant's Brief at 5–6. The motion was filed on February 15, 1978, more than two years after the complaint and less than two months before the scheduled trial date, April 10, 1978. In such circumstances, as we have observed, DR 5–102(B) must be given a limiting and non-literal construction. Even when a motion to disqualify is made on the eve of trial, however, it can be granted where the mov-

ant has demonstrated that continued representation will breach the canons and standards of conduct in this court. Plaintiffs' lateness in making this motion does not preclude them from making that showing.

■ Secondly, it is argued that the rights of the client, K & S, would be infringed by the court-ordered withdrawal of Pepper, Hamilton & Scheetz. Trial counsel in fact has informed K & S of the plaintiffs' motion to disqualify and has offered to withdraw from the case, and K & S has stated its desire for continued representation and its belief that withdrawal would cause it severe hardship. *Id.* at 10 and Exhibit A thereof. The court in *Greenebaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co.* considered "the informed judgment of the client" to continue to retain counsel an important factor in denying a DR 5–102(B) argument in a disqualification motion. 421 F.Supp. at 1354. We are less certain of the effect this factor has on a motion for disqualification in our district. Where a movant demonstrates that a lawyer's (or firm member's) testimony will or is substantially likely to prejudice his or her client's case, the disciplinary rule is breached and our rules of court, which are concerned directly with the standards of conduct of the bar and only indirectly with the interests of litigants, are violated.[4] We must act upon a proper motion to end such a violation.[5] Because we have concluded that plaintiffs have not made a sufficient showing to disqualify counsel, however, we need not consider the effect of K & S's consent to Pepper, Hamilton & Scheetz's continued representation.[6]

---

4. In *Greenebaum Mountain Mortgage Co. v. Pioneer National Title Insurance Co.,* the canons had not been adopted as rules of court.

5. The interest of the client in effective and economical representation is served, however, by the reflection in our interpretation of DR 5–102(B) of concern about its use as a trial tactic. Requiring more than the mere assertion of prejudice and the likelihood thereof will help "to prevent literalism from possibly overcoming substantial justice to the parties." *J. P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d at 1360.

6. We also do not reach the issues of whether possible inconvenience and expense to K & S constitute the "substantial hardship on the client because of [counsel's] distinctive value" which permits a lawyer to undertake employment in litigation in which he or she (or a partner) may testify, DR 5–101(B)(4), or whether such hardship can overcome a DR 5–102(B) motion for disqualification where prejudice has been made out.

### III. PLAINTIFFS' DR 4–101(B) CLAIM:

Plaintiffs assert that trial counsel should be disqualified also because Page has violated Canon 4, which states, "A lawyer should preserve the confidences and secrets of a client". Plaintiffs' Reply Brief at 5–6. It is alleged that Page violated the canon, and Disciplinary Rule 4–101(B) promulgated under it, by representing VSI, K & S, Freeman and VEL simultaneously in late 1974 and 1975.[7] The merits of this factual allegation aside, plaintiffs again have failed to demonstrate the relevance of Page's ethical conduct. Plaintiffs appear to contend that counsel should be disqualified because Canon 4 has been and will be violated by Page and his firm's continued representation of K & S. For this proposition plaintiffs cite *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir. 1973). There the Second Circuit affirmed a trial court's granting of a motion to disqualify plaintiff's counsel who had earlier served as counsel for a company related to defendant *in a case regarding the same issues* as the case at bar. The lawyer's continued service in opposition to his ex-client was deemed in that circumstance to violate his responsibilities under Canon 4, and the motion for disqualification was granted to avoid prospective violation of the canon.

■ We see no reason why Page's breach of Canon 4 (assuming the truth of the allegations) should lead to disqualification. Again, plaintiffs focus on alleged impropriety by Page in failing to withdraw from representing K & S, without suggesting why that conduct ought to be grounds for disqualification of Page's law firm. *Emle Industries,* relied on by plaintiffs, does not apply on two grounds. First, the extension to firm members explicitly granted under DR 5–102(B) is not provided for in

DR 4–101(B), which merely says "a lawyer"—*i. e.,* Page himself and not his firm—"shall not . . .". Second, *Emle Industries* concluded disqualification was appropriate on the basis of the mechanical test formulated by Judge Weinfeld in *T. C. Theatre Corp. v. Warner Brothers Pictures,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953), premising disqualification on representation by the lawyer of an ex-client's adversary in a "pending suit" in which the issues are "substantially related" to those of an earlier suit in which the lawyer represented the ex-client. Since there was no suit in which Page represented VEL or Freeman, this rule is inapposite here.

### IV. SCOPE OF JUDICIAL INQUIRY:

Several courts have observed that motions to disqualify require them to look into the factual contentions of a lawsuit at a preliminary stage in order to assess the merit of the claims underlying the motion and opposition. Moreover, the Third Circuit has mandated that trial courts explain their reasoning behind resolutions of such motions.[8] *Kreda v. Rush,* 550 F.2d 888, 890 (3d Cir. 1977). We cannot, consequently, accept the plaintiffs' assertion that a more limited inquiry of the kind described in *Emle Industries, Inc. v. Patentex, Inc.* is proper here. Plaintiffs' Reply Brief at 6–7. There, the Second Circuit noted that "the court need not, indeed cannot, inquire whether the lawyer did, *in fact,* receive confidential information during his previous employment which might be used to the client's disadvantage." 478 F.2d at 571 (emphasis in original). As we noted above, however, that court concluded Canon 4 was violated and affirmed an order to disqualify counsel because the mechanical rule of representation of a former client's opponent in

---

**7.** DR 4–101(B) provides:

"(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third

person, unless the client consents after full disclosure."

(notes omitted).

**8.** This circuit has not gone so far as the Tenth Circuit, which requires that trial courts makes specific findings of fact and conclusions of law in ruling on motions for disqualification of counsel. *See Fullmer v. Harper,* 517 F.2d 20 (10th Cir. 1975).

a later lawsuit was breached; that rule is susceptible to application with limited reference to the underlying facts of the case. A motion to disqualify under DR 5–102(B) raises dissimilar issues, at least when it is made following considerable discovery and shortly before trial. In order to discern whether testimony "is or may be prejudicial", that testimony and other evidence in the case must be presented by the movant and scrutinized by the court.

The judicial consideration of the underlying facts might be extended to require that the court hold a factual hearing when a DR 5–102(B) motion to disqualify is made under circumstances such as these. We know of no case requiring us to hold such a hearing. Furthermore, both plaintiffs and defendant K & S have waived specifically and on the record any rights to a hearing which they might have had, and there is agreement among them that we can rule on the motion based upon the rather lengthy briefs and appendices thereto.

Because plaintiffs have failed to demonstrate or specify a prejudicial effect of Page's testimony upon K & S's case which is any more than speculative, their motion to disqualify counsel will be denied.