429 So.2d 348 (1983)
Gabriel CAZARES and Margaret Cazares, Petitioners,
v.
The CHURCH OF SCIENTOLOGY OF CALIFORNIA, INC., Merrell Vannier, Francine Vannier, Clyde H. Wilson, Jr., Wilson, Wilson & Namack, Chartered, Tobias Tolzman, Mary Sue Hubbard, L. Ron Hubbard, and Joseph Lisa, Respondents.
No. 82-1059.
District Court of Appeal of Florida, Fifth District.
March 9, 1983.
Rehearing Denied April 14, 1983.
*349 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, C. Allen Watts, De Land, and Wagner Cunningham of Vaughan & McLaughlin, P.A., Tampa, for petitioners.
W.L. Kirk, Jr., of Rumberger, Kirk, Caldwell, Cabaniss & Burke, P.A., Orlando, for respondents Wilson, and Wilson, Wilson and Namack, Chartered.
Paul Antinori, Jr., Tampa, for respondent Church of Scientology of California, Inc.
No appearance for respondents Merrell Vannier, Francine Vannier, Tobias Tolzman, Mary Sue Hubbard, L. Ron Hubbard, and Joseph Lisa.
FRANK D. UPCHURCH, Jr., Judge.
Gabriel and Margaret Cazares petition this court for a writ of certiorari to review an order disqualifying their counsel Walt Logan from further representation in their suit against the respondents, the Church of Scientology.
In 1976, the Church filed suit in federal court against Cazares as mayor of Clearwater for defamation and deprivation of its First Amendment rights. Cazares was defended by attorney John Allen who was supplied by the liability carrier for Clearwater. Allen associated Walt Logan, the attorney involved in the order which we review, to assist him. The federal district court entered final summary judgment against the Church and assessed attorney's fees on the ground that its suit was frivolous. Church of Scientology of California v. Cazares, 455 F. Supp. 420 (M.D.Fla. 1978), aff'd, 638 F.2d 1272 (5th Cir.1981).
At about the same time, the Cazareses filed a defamation action against the Church and others in state court. They were represented by Merrill Vannier. The Cazareses came to distrust Vannier suspecting that he was a "spy" for the Church and ultimately instructed him to voluntarily dismiss their suit against the Church.
In March, 1980, the Cazareses filed the action from which this petition derives. Counts I and II are based on malicious prosecution and abuse of process. Count III alleges invasion of privacy by the Church, Vannier and others. This count is based on allegations that Vannier was a member of the Church, that he solicited representation of the Cazareses at the request of the Church and that he was actually representing the Church at the time he purported to represent the Cazareses in their action against the Church. The Cazareses are represented in this action by Walt Logan, among others.
In May, 1981, counsel for Vannier wrote Logan requesting that he withdraw as counsel for the Cazareses because he was a necessary witness in the action. Logan refused to withdraw.
In April, 1982, the Church filed a motion seeking disqualification of Logan. After a hearing was held in the matter, the trial court entered an order disqualifying Logan as counsel for the Cazareses under DR 5-101(B) of the Florida Code of Professional Responsibility on the ground (1) that Logan "should be" a witness in the suit; (2) that the Cazareses' determination to forego Logan's testimony in favor of retaining him as counsel was irrelevant; (3) that Logan's testimony was "necessary ... should Merrell Vannier testify during trial"; (4) that the Church did not waive Logan's disqualification by delaying its motions until 25 months after suit was filed; and (5) that the Cazareses would not suffer a "substantial hardship" by Logan's disqualification at this late date in the proceedings.
We have previously reviewed by certiorari orders involving the disqualification of counsel. State ex rel. Oldham v. Aulls, 408 So.2d 587 (Fla. 5th DCA 1981). See also Live & Let Live, Inc. v. Carlsberg Mobile Home Properties, Ltd.-73, 388 So.2d 629 (Fla. 1st DCA 1980).
To determine its correctness, the order must be tested against the standards imposed by the Disciplinary Rules of the Code of Professional Responsibility. Id.
The Cazareses contend that none of the disciplinary rules require the removal of Logan. The Church responds that it intends to call Logan to give testimony essentially *350 defensive in character and against the interests of the Cazareses, and therefore, the order is justified under either DR 5-101(B) or DR 5-102(B). The Church notes that it has never argued that Logan ought to be called as a witness on behalf of the Cazareses and thus DR 5-102(A) is not applicable here.
DR 5-102(B) provides that if, after undertaking litigation, a lawyer learns or it is obvious that he may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client in such a situation. The concern of the rule is that trial counsel might be inhibited from attacking his own credibility or arguing to the fact-finder the lack of credibility of his testimony thus affecting his ability to properly represent his client. Freeman v. Kulicke & Soffa Industries, Inc., 449 F. Supp. 974 (E.D.Pa. 1978), aff'd., 591 F.2d 1334 (3rd Cir.1979).
In line with the policy underlying DR 5-102(B), the anticipated testimony is "prejudicial" only when sufficiently adverse to the factual assertions or account of the events offered on behalf of the client. Id.; Smith v. New Orleans Fed. Sav. & L. Assn., 474 F. Supp. 742 (E.D.La. 1979); Rice v. Baron, 456 F. Supp. 1361 (S.D.N.Y. 1978). And, in order to require disqualification, the prejudice which would or might result from the testimony must be more than de minimis. That is, it must be substantial enough that an independent attorney might seek to cross-examine the witness and question his credibility. Freeman, 449 F. Supp. at 977. This narrow construction derives from the overall policy of the rule and the committee comment which notes that the rule was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel. Id.; Kroungold v. Triester, 521 F.2d 763, 766 (3d Cir.1975), disapproved on other grounds, Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).
Similarly, a narrow construction has been applied to the language "is or may be (prejudicial)" in the disciplinary rule. Freeman, 449 F. Supp. at 978. The mere assertion that the attorney's testimony may prejudice his client has been held to be insufficient. Kroungold, 521 F.2d at 766. Rather, the moving party bears the burden of demonstrating the likelihood that prejudice will or might result. Freeman, 449 F. Supp. at 978; Rice, 456 F. Supp. at 1371.
The Church claims that it will elicit from Logan prejudicial testimony that the initial action brought by the Cazareses was meritless and that attorney Vannier never requested any private or confidential information regarding the Cazareses. The Church argues that it needs this testimony to defend the invasion of privacy claim of the Cazareses.
In Freeman, the court required the moving party to point to deposition testimony to corroborate its claims where the motion for disqualification was made after discovery and near the trial. 449 F. Supp. at 978. Here, litigation had been in progress for over two years at the time of the motion for disqualification. The Church admitted that it had taken Logan's deposition yet fails to point to any specific testimony to support its claims. The mere assertion that Logan's testimony "is expected to be `prejudicial' to the case" without any corroboration is not sufficient to meet the burden of proof for disqualification under this rule.
Perhaps the only potentially prejudicial testimony is Logan's statement in his deposition that the psychiatric examination of Mrs. Cazares scheduled in the state action was of "concern" to the parties. Logan further testified that the Cazareses wanted to dismiss the suits while Vannier wanted to go ahead with the examination. However, Logan also testified that the order allowed the Church to select the psychiatrist and that Vannier told the Cazareses that they could not apply to the trial court to amend the order. When viewed in this context, the fact that Vannier wanted to go ahead with the examination is consistent with the Cazareses' claim that Vannier invaded their privacy and attempted to gain damaging evidence about them for use by the Church.
*351 Because the Church failed to demonstrate the likelihood that prejudice will or might result from Logan's testimony, DR 5-102(B) does not require his disqualification. The order of disqualification, however, referred to DR 5-101(B) as the basis for disqualification. DR 5-101(B) provides that a lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he "ought to be called as a witness" unless the testimony involves routine or uncontested matters.
Unlike DR 5-102, DR 5-101 does not distinguish the attorney-as-witness on behalf of his client and the attorney-as-witness other than on behalf of his client.[1] Ethical Consideration 5-10 observes that problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment (DR 5-101) or should withdraw from employment (DR 5-102). EC 5-10 further notes that regardless of when the problem arises, the attorney's decision is to be governed by the same basic considerations.
If the same basic considerations underlying DR 5-102 also apply to DR 5-101, then Logan was not properly disqualified under DR 5-101 on the basis that he ought to be called as a witness other than on behalf of his client as the requisite showing of prejudice was not made. The question then is whether Logan was properly disqualified on the basis that he knew or it was obvious that he ought to be called as a witness on behalf of his client.
The record shows and indeed the Cazareses admit that Logan was at least a potential witness in this case. However, the mere fact that an attorney is a potential witness is not the test for determining whether he "ought to be called" as a witness on behalf of his client.
In Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp., Inc., 546 F.2d 530, 539 n. 21 (3d Cir.1976), cert. denied, Super Athletics Corp. v. Universal Athletic Sales Co., 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), the Court of Appeals for the Third Circuit interpreted the phase "ought to be called on behalf of his client" as requiring the withdrawal of counsel only if he is an indispensable witness, that is, he must have crucial information in his possession which must be divulged.[2] The court suggested that under this test, an attorney-witness is not indispensable if other witnesses are available to testify to the same information. Id. Accord, Davis v. Stamler, 494 F. Supp. 339 (D.N.J. 1980) aff'd, 650 F.2d 477 (3rd Cir.1981); J.D. Pflaumer, Inc. v. United States Dept. of Justice, 465 F. Supp. 746 (E.D.Pa. 1979).
Whether to testify in a particular case is a decision best left to the discretion of the attorney and client. Davis; J.D. Pflaumer. As the court in J.D. Pflaumer observed:
Plaintiffs and their counsel should be permitted to present their case according to their own best judgment, and if it is their best judgment that they can get by without testimony from counsel, then it is certainly not up to defendants to urge upon them a different plan of presentation that would necessitate disqualification... . Moreover, it cannot be said that plaintiffs present intention to forego counsel's testimony is so `obviously' contrary to what they `ought' to do as to require me now to declare that their intention is ill-considered, that their only hope of success lies in counsel's testimony, and that they must now at this late date seek legal representation elsewhere. Rather than interfere in this way with plaintiffs' right to counsel of their own choosing and with their right to present *352 their case as they see fit, it would be more appropriate to leave it to counsel themselves to decide whether they ought to testify. Clearly, where there is a good faith dispute between the parties as to whether a lawyer-witness possesses crucial information, that attorney and his client are in the best position to determine whether his testimony is in fact indispensable. As the Third Circuit stated in Universal Athletic Sales Co., supra, `the attorney, or his firm, must decide whether to serve either as advocate or as a witness in a particular case.' (emphasis in original; citations and footnotes omitted).
465 F. Supp. at 747-748.
Applying the Universal standard, the court in Davis found that disqualification was not warranted where the attorney expressly stated that he had no intention of appearing as a witness for his client, the information which he possessed was not "crucial", and his client concurred with this determination. 494 F. Supp. at 342. Similarly, disqualification was not warranted in Ross v. Great Atlantic & Pacific Tea Co., Inc., 447 F. Supp. 406 (S.D.N.Y. 1978) where the court observed that while the attorney was familiar with the circumstances surrounding the plaintiffs' claim, the plaintiffs' case could be readily presented through documents and the testimony of other witnesses who have first hand knowledge of the facts. 447 F. Supp. at 408.
In the present case, the Cazareses stated that they were advised prior to commencing the lawsuit that Logan could not both represent them and be a witness in their case. Both the Cazareses testified that they preferred to retain Logan as counsel rather than have him testify. The Cazareses also claim that any information Logan possesses could be presented through the testimony of others. As Logan does not appear to have any crucial information in this case and his clients prefer that he remain as counsel, disqualification under DR 5-101(B) on the basis that Logan "ought to be called as a witness" is not warranted.
Writ of certiorari GRANTED and the order of disqualification is QUASHED.
SHARP, J., concurs.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially:
I fully concur with the majority opinion quashing an order disqualifying Mr. Logan from representing the Cazareses in this case. I concur specially because I am skeptical and apprehensive of the concept of courts "disqualifying" lawyers from representing clients in particular cases. This practice is new and appears to be based on the practice in federal courts and on a short line of recent cases, primarily from this court, that assume and accept that practice. See, e.g., Trautman v. General Motors Corp., 426 So.2d 1183 (Fla. 5th DCA 1983); Pantori Inc. v. Stephenson, 384 So.2d 1357 (Fla. 5th DCA 1980); Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979); Holland v. Tenenbaum, 360 So.2d 493 (Fla. 4th DCA 1978). I think the usual disciplinary proceedings to enforce legal ethics and clients' legal causes of action against their own counsel for breach of ethical and legal duties, coupled with the court's power to curtail disruptive or disrespectful conduct, are adequate remedies and that courts should not establish a practice of disqualifying and removing attorneys in particular cases based on the nebulous theory that failure to remove a particular attorney in a particular case might give one party an unfair advantage over another. If logically extended the practice will require the trial court at pre-trial conference to procedurally handicap the more able counsel. If such "unfair" advantage cannot be redressed in disciplinary proceedings and does not constitute a legal cause of action in favor of a client, and is not contemptuous conduct, it should not be used to interfere with the right of the public to select, and be represented by, an attorney of choice.
NOTES
[1] The order is unclear as to whether Logan was disqualified as a witness on behalf of his clients or as a witness other than on behalf of his clients.
[2] Other courts have looked to whether the attorney "will be required" to testify, Ross v. Great Atlantic & Pacific Tea Co., 447 F. Supp. 406 (S.D.N.Y. 1978), or whether the attorney is aware of facts making it "obligatory" for him to testify in order to advance his client's case zealously. Cossette v. Country Style Donuts, Inc., 647 F.2d 526 (5th Cir.1981).