David C. JONES, Plaintiff,

v.

A. Gary KOVACS, Individually, Financial Planning Services, Inc., and Bi-State Oil, Inc., Defendants.

Civ. A. No. H–85–6893.

United States District Court,
S.D. Texas,
Houston Division.

May 7, 1987.

R. Leonard Weiner, Weiner, Strother & Lamkin, Houston, Tex., for plaintiff.

Alan N. Magenheim, Charles W. Getman, Robert N. Hinton, Hinton & Associates, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER TO DISQUALIFY PLAINTIFF'S COUNSEL

HITTNER, District Judge.

On April 7, 1987, this Court held a Pretrial Conference for this case. Prior to this conference, the Court ordered the parties to submit, in addition to the standard Joint Pretrial Order, a detailed trial plan which requested a list of each side's witnesses along with proposed time allocations to conduct direct, cross and rebuttal examination of the witnesses. Additionally, the Court struck nineteen motions filed by the parties because those motions were filed after the motion cut-off date. Among those motions struck is Defendants' Second Motion to Disqualify Plaintiff's Counsel. Having reviewed the Joint Pretrial Order received on April 3, 1987, the parties' trial plans, the oral reurging of Defendants' Second Motion to Disqualify Plaintiff's Counsel, the materials submitted therewith, the oral arguments at the April 7, 1987, hearing, and the law applicable thereto, this Court is of the opinion that Defendants' Second Motion to Disqualify Plaintiff's Counsel should be, and hereby is, GRANTED.

FINDINGS OF FACTS:

This is a case of alleged securities fraud in the sale of, and in the advice concerning, tax shelter investments. For a period from 1982 through 1984, Plaintiff sought and received advice from the Defendants Kovacs and Financial Planning Services (FPS) who allegedly were licensed and qualified investment advisors. Plaintiff paid Defendant FPS approximately $5,000 for the preparation of a financial plan, the alleged goals of which were to defer Jones' tax liability and hopefully to make some money. Additionally, Plaintiff allegedly purchased from and/or was advised by Defendant Kovacs and FPS to purchase a variety of securities and/or investments which were represented to meet the goals of Plaintiff's financial plan. All did not go as planned, or at least, as allegedly represented.

Among the securities/investments under scrutiny are: (1) Bi-State 1983, for which the Plaintiff paid $50,000; (2) First Forest and Wood Partners, for which the Plaintiff paid $14,058; and (3) OEC Leasing Corp., for which the Plaintiff paid $16,750. Particularly relevant to Defendants' Motion to Disqualify Plaintiff's Counsel are the transactions relating to the OEC Leasing investment and its alleged tax advantages. Part of the damages Plaintiff seeks to recover is the taxes, interest, and penalties the IRS levied on the Plaintiff for the denial of deductions the Plaintiff claimed for his OEC Leasing investment. See Joint Pretrial Order at 2, and Plaintiff's Memorandum Regarding Benefit of the Bargain Damages. Therefore, Plaintiff has put into issue the validity of OEC Leasing deductions he claimed.

The Motion to Disqualify Plaintiff's Counsel currently before this Court is a second attempt at disqualification. The basis of Defendants' First Motion to Disqualify Plaintiff's Counsel, which was heard and denied by the United States Magistrate, was that Plaintiff's counsel in this suit also represented the Plaintiff before the IRS concerning the Plaintiff's OEC Leasing deductions. Since the November 17, 1986, hearing with the Magistrate, however, Defendants assert that they have discovered new evidence, and list Plaintiff's counsel as a witness in the Joint Pretrial Order. This new evidence is a letter dated October 1, 1985, from R. Leonard Weiner, Plaintiff's counsel, to the IRS, District Director (Austin, Texas). In this six-page letter, Mr. Weiner makes several assertions about the propriety of Plaintiff's credits and deductions concerning the OEC Leasing investment. Several of these assertions made to the IRS under penalty of perjury apparently contradict the Plaintiff's assertions made in this lawsuit; e.g., the correct valuation of OEC Leasing equipment. See October 1, 1985, letter from R. Leonard Weiner at 4, as contained in Attachment 1 of Defendants' Second Motion to Disqualify Plaintiff's Counsel. Cf. Deposition of R. Leonard Weiner taken on December 4, 1986,

page 104, line 8, through page 105, line 17, as contained in Attachment 3 of Defendants' Second Motion to Disqualify Plaintiff's Counsel.

The six-page letter that is at the heart of Defendant's Second Motion to Disqualify Plaintiff's Counsel appears in the pleadings as Attachment 1 to Defendants' Second Motion to Disqualify Plaintiff's Counsel, and is stamped with Bates stamp numbers 008284 through 008289. It is a "protest letter" to the IRS challenging proposed adjustments for alleged income tax deficiencies for 1979, 1980, and 1982.

Under the heading "Findings to Which Taxpayers Take Exception:" on page 2 of the letter, it states that

Taxpayers take exception to all of the proposed adjustments and all of the findings by the Internal Revenue Service disallowing deductions and credits claimed by Taxpayers with respect to their leasing of energy saving equipment in calendar year 1982, including the following grounds:

1. That the losses and tax credits were not incurred in a trade or business. . . .

2. That the investment tax credit and business energy credit are disallowed. . . .

3. That the prepaid rent expense is disallowed. . . .

4. The imposition of negligence penalties. . . .

At page 4 of this letter, it states:

While the Internal Revenue Service asserts that the fair market value of the energy equipment leased by Taxpayers was substantially overvalued, Taxpayers disagree with this finding. . . . Taxpayers assert that the valuation placed on the energy equipment, pursuant to independent appraisals submitted to the Internal Revenue Service were proper and accurately reflect the fair market value of said equipment.

At page 5, it states:

Lastly, Taxpayers assert that the deductions and credits claimed were proper and not due to negligence or intentional disregard of rules and regulations.

Finally, at page 6, is the certification made by Plaintiff's counsel, Mr. Weiner:

I certify under penalties of perjury that I prepared the above protest based on information supplied to me by others and to the best of my knowledge and belief the information contained herein is true.

Yours truly,

R. Leonard Weiner

In Plaintiff's Response to Defendants' Second Motion to Disqualify Plaintiff's counsel, Plaintiff asserts that Plaintiff's counsel, Mr. Weiner, is not a material fact witness to any disputed fact because Mr. Weiner's representations to the IRS, made under penalty of perjury, were based on information supplied by others. In particular, Mr. Weiner relied upon information supplied by Mr. Larry Kars, a tax attorney "hired by the issuers of the OEC securities to represent investors regarding tax matters." Plaintiff's Response to Defendants' Second Motion to Disqualify Plaintiff's Counsel at 2. Mr. Weiner nonetheless held a power of attorney from Mr. Jones in order to represent Mr. Jones before the IRS. It was Mr. Weiner who made the above representations to the Austin office of IRS, allegedly to gain time until the settlement between Mr. Kars and the IRS in Washington, D.C., arrived in Austin.

This Court is concerned that it appears that Mr. Weiner was attempting to finesse perjury averments in order to cause a delay with the IRS.[1] Concerning the issue of attorney disqualification, however, this Court will address the fact that Mr. Weiner cannot place himself in such a position and then hope that the opponent will not avail himself of the allegedly contradictory rep-

---

1. The Court does not now address the potential issue raised by the above-described conduct by Plaintiff's counsel. However, the Court notes that intentionally misleading information known to and conveyed by the litigant's attorney can be grounds for disqualification of the attorney. *See Schmidt v. Ford Motor Co.,* 112 F.R.D. 216 (D.Col.1986).

resentations made on a material issue in this case. Mr. Weiner has placed his credibility on the line for his client. Once in this position, the Court cannot allow Mr. Weiner to potentially jeopardize his client's case [2] by continuing in an advocate's role once it is clear that the opponent's counsel has a legitimate reason to call Mr. Weiner to the stand.

CONCLUSIONS OF LAW:

The law applicable to a disqualification of a testifying attorney is the law of professional responsibility. The Rules of Discipline for the United States District Court for the Southern District of Texas are contained in Appendix G of the Local Rules (aff. June 1, 1983) and Rule 4 B of Appendix G adopts the Code of Professional Responsibility of the State Bar of Texas, which for the most part follows the American Bar Association (ABA) Code of Professional Responsibility composed of Canons, Ethical Considerations (EC), and relatively specific Disciplinary Rules (DR). Additionally, there has been considerable case law interpreting the ECs, Canons, and DRs applicable to the "advocate-witness" rule.

The advocate-witness rule is contained in DR 5–101 and DR 5–102. DR 5–102: Withdrawal as Counsel When the Lawyer Becomes a Witness, consists of two parts. Part (A) concerns the rule for situations where the lawyer or a member of his firm "ought to be called as a witness on behalf of his client...." DR 5–102(A). This rule is not applicable to the case at hand because Mr. Weiner would be called by the Defendant for impeachment purposes; therefore, DR 5–102(B) is the applicable rule:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

It appears to this Court that the Fifth Circuit has not written directly upon DR 5–102(B). The leading Fifth Circuit case on disqualification of an attorney under the advocate-witness rule addresses DR 5–102 and EC 9–6 generally, but does not differentiate between DR 5–102(A) and DR 5–102(B). *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526 (5th Cir.1981).[3] There is, however, a Texas appellate court decision addressing DR 5–102(B) and the situation in which a litigant intends to call his opponent's counsel. In *Stocking v. Biery*, 677 S.W.2d 792 (Tex.App.—San Antonio 1984, no writ), the court established a standard for disqualifications under DR 5–102(B). "The mere announcement by the movant that he intends to call opposing counsel as a witness is insufficient to demand disqualification. *United Pacific Ins. Co. v. Zardenetta*, [661 S.W.2d 244 (Tex. App.—San Antonio 1983, no writ)]. The testimony to be elicited from the attorney should be material to the movant's defense as well as prejudicial to the interest of the attorney's client before disqualification is required. *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D.Pa. 1978)." *Stocking* at 794.

Additionally, in *Cossette*, the Fifth Circuit provides some general guidelines for all attorney disqualification cases.

**2.** "Although these disciplinary rules are for the protection of clients, they are also for the protection of the bar and the integrity of the court." *Supreme Beef Processors, Inc. v. Am. Consumer Ind., Inc.*, 441 F.Supp. 1064, 1068 (N.D.Tex. 1977), citing 6 Wigmore on Evidence § 911 at 775–80 (Chadborne ed. 1976).

**3.** *See, e.g.*, of differentiation between DR 5–102(A) and (B) in *Jones v. City of Chicago*, 610 F.Supp. 350, 360 n. 3 (N.D.Ill.1984), citing *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D.Pa.1978). "*Freeman* dealt with DR 5–102(B) which calls for disqualification where a lawyer may be called as a witness other than on behalf of his client. In such circumstances, the movant must make a showing that the testimony of the lawyer may prejudice the testifying lawyer's own clients. If the testimony may be prejudicial, the testifying lawyer's firm may be disqualified for fear that the testifying lawyer's partners may not adequately attack their partner's credibility. A finding of prejudice to the client under DR 5–102(B) is more stringent than under DR 5–102(A) since a litigant obviously may call his or her opponent's lawyer as [a] trial tactic to seek to disqualify the lawyer from the case." *Jones*, 610 F.Supp. at 360 n. 3.

"The rule of disqualification is not mechanically applied in this Circuit." [*Church of Scientology v. McLean*, 615 F.2d 691, 692 (5th Cir.1980), citing *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 173-74 (5th Cir. 1979) ]. Rather, it involves a balancing of the likelihood of public suspicion against the interest in retaining counsel of one's choice. *McLean*, 615 F.2d at 691. There must be a reasonable possibility some specifically identifiable impropriety occurred in order to warrant disqualification. *Id.* See also [*Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir.1977) ] and *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir.1978).

*Cossette*, 647 F.2d at 530.

Finally, the Court must consider if any of the four exceptions to the advocate-witness rule are applicable to this case. Specifically, DR 5–101(B) provides that

A lawyer shall not accept employment ... except that he may undertake the employment

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

CONCLUSION:

The Defendants have presented sufficient, specific evidence of the testimony by Plaintiff's counsel that the Defendants anticipate producing to a jury in this case. The Court finds the substance of that testimony to be material and relevant to a disputed issue in this case. Furthermore, the Court finds the nature of the testimony to be for impeachment. As a witness, it is anticipated that Mr. Weiner's testimony would be adverse to the factual assertions he intends to offer on behalf of his client, and therefore his testimony would be prejudicial.[4] Lastly, the Court does not find Defendants' Motion to Disqualify Plaintiff's counsel to be purely a trial tactic.[5] Neither does the Court find that the disqualification of Plaintiff's Counsel would work a "substantial hardship on the client because of the distinctive value of the lawyer...." The DR 5–101(B)(4) exception should be narrowly construed, *Supreme Beef Processors, Inc.*, 441 F.Supp. at 1069.

For the above reasons, this Court believes that Defendants' Second Motion to Disqualify Plaintiff's Counsel should be, and hereby is, GRANTED.

---

**4.** *See Freeman*, 449 F.Supp. at 977. "We think the policy underlying the disciplinary rule [DR 5–102(B) ] gives rise to the test of what is 'prejudicial': the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.*

**5.** The Court is sensitive to the possible abuse of the motion to disqualify. For a view from the Second Circuit, *see Lumbard v. Maglia, Inc.*, 621 F.Supp. 1529, 1539–40 (D.C.N.Y.1985), citing *Allegaert v. Perot*, 565 F.2d 246 (2d Cir., 1977).