**Joseph RENSHAW**

v.

**Edward RAVERT et al.**

**Civ. A. No. 78–1076.**

United States District Court,
E. D. Pennsylvania.

Nov. 16, 1978.

Daniel Sherman, John J. Hagarty, Philadelphia, Pa., for plaintiff.

Gerald T. Clark, Asst. City Sol., Law Dept., Nicholas Nastasi, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Joseph Renshaw (Renshaw) has filed a suit pursuant to 42 U.S.C. § 1983 and various constitutional provisions against defendant Edward Ravert (Ravert), other members of the Philadelphia Police Department, and the City of Philadelphia. The case is presently before us on defendant Ravert's motion for the disqualification of plaintiff's counsel, John J. Hagarty, Esquire, and Daniel Sherman, P.C.

There is no dispute that on December 10, 1969, Ravert sustained injuries to his head, face, and neck as a result of an automobile accident. Sherman's office represented Ravert in an ensuing personal injury action that was settled without trial. After the instant action was commenced, Sherman's prior representation of Ravert became the basis of an offer by plaintiff's counsel to withdraw from this case. By letter of April 25, 1978, Hagarty relayed the following offer of withdrawal to Ravert's present counsel, Nicholas J. Nastasi:

This will also confirm that my offices did, in fact, represent Mr. Ravert in an accident case approximately five years ago, although I was not associated with this office at that time. Please inform Mr. Ravert that because of our prior representation, we will, if he wishes, withdraw as attorneys of record in connection with the prosecution of this suit.

Exhibit B to Ravert's Affidavit. Two days later Ravert, through his attorney, requested that Hagarty make good his offer to withdraw:

I have informed my client of your offer to withdraw as counsel in this case. I am authorized to inform you that Mr. Ravert wishes to avail himself of his right to request your disqualification. Furthermore, because your office served as his counsel in the past, Mr. Ravert requests that you should not participate in the future prosecution of this suit in any manner whatsoever. I suggest to you, in order to avoid even the "appearance of impropriety", that you should not refer this case to another office. It seems that the only proper resolution to your disqualification is to refer Mr. Renshaw to other counsel of his choosing with no guidance or direction from your office.

Exhibit C to Ravert's Affidavit.

Confronted with Ravert's request that he withdraw, Hagarty conducted "further investigation," discussed the matter with the Professional Guidance Committee of the Philadelphia Bar Association, and decided that his office was not "obligated to withdraw from this case as long as full disclosure is made." Letter of May 10, 1978, from Hagarty to Nastasi, Exhibit D to Ravert's Affidavit.

After Hagarty refused to withdraw, Ravert moved for his disqualification, invoking Canons 4 and 5 of the Code of Professional Responsibility. The necessity of disqualification was premised in part on the fact that in his counterclaim Ravert alleged injuries similar to those that had precipitated Sherman's earlier representation. Therefore, defendant argued, "[Ravert's] disclosure to Daniel Sherman at that time could seriously impede the ability of Mr. Hagarty and his law office from acting impartially toward defendant Edward Ravert . . . ." Defendant's Memorandum of June 14, 1978, at 1.

In his response to defendant's motion, plaintiff argued that Sherman's office acquired no confidences as a result of its prior representation of Ravert and that Mr. Hagarty had not been associated with the Sherman office at the time of the prior representation and had done no work pertaining to it. Furthermore, plaintiff contended that defendant was motivated to move for the disqualification of plaintiff's counsel not by concern that confidences would be used against him, but by a fear that the trust enjoyed by the Sherman office in the Roxborough-Manayunk section of Philadelphia would enable it to succeed in securing the evidence necessary to prevail in the underlying action where other attorneys would likely fail.

In order to assess the possibility that the similarity of the injuries sustained by Ravert in 1969 and allegedly sustained in 1978 might create a situation in which his former attorney might use information gained in the course of the previous representation against him in the instant action, we asked the parties to address the exact nature of the injuries in each incident. In response to our request, the defendant filed an affidavit asserting that he sustained injuries to his head in each instance. Plaintiff submitted an affidavit to us that listed all the medical information pertaining to Ravert that was available as a result of the prior representation. Plaintiff did not supply copies of this affidavit and the supporting memorandum to defendant, however, on the belief that an *in camera* inspection would be more appropriate. Plaintiff's tactic in this regard became the basis for further assertions on defendant's part that the participation of the Sherman office in this case created the appearance of impropriety, and that plaintiff's counsel was attempting to use against Ravert, in a secretive manner, information obtained through prior representation on his behalf. Letter of

September 13, 1978, from Nastasi to Judge Huyett.

In the meanwhile, defendant tried to acquire from plaintiff's counsel through discovery all material relating to the prior representation of Ravert. Plaintiff's counsel have not complied with the discovery request; and defendant recently moved to compel the discovery of this material.

Unable to decide the motion to disqualify on the basis of the information before us, we scheduled a hearing and invited the parties to submit further affidavits if they so desired. We specifically advised the parties that one area of inquiry at the hearing would be defendant's motive in filing the instant motion. Defendant chose to submit no further affidavits. Plaintiff submitted additional affidavits, but the allegation of defendant's possible bad faith in filing this motion was not addressed.[1]

On the basis of the information now before us, we consider defendant's motion that plaintiff's counsel be disqualified. We are guided by Rule 11 of the Local Rules of Civil Procedure, which adopts the canon of ethics of the American Bar Association as the standards of conduct for attorneys of this court.

■ First of all, we agree with plaintiff that defendant's reliance on Canon 5 is inapposite in this case. The concerns of that Canon, which provides that "[a] lawyer should exercise independent professional judgment on behalf of a client," are for the protection of Renshaw in this case, not Ravert. Renshaw is fully aware of his counsel's former representation of defendant. Renshaw Affidavit. On the facts of this case, there is no reason to suspect that the previous attorney-client relationship will in any way impair the representation that the Sherman office could provide for Renshaw.

■ We believe that the applicable Canons in this case are 4 ("A lawyer should preserve the confidences and secrets of a client") and 9 ("A lawyer should avoid even the appearance of professional impropriety"). Disqualification of an attorney may be an appropriate remedy in at least two situations: "where it appears that the subject matter of a pending suit in which an attorney represents an interest adverse to a prior employer is such that during the course of the former representation he might have acquired substantially related material," or "where there may be the appearance of a possible violation of confidences, even though any impropriety may not in fact exist." *Baglini v. Pullman, Inc.*, 412 F.Supp. 1060, 1064 (E.D.Pa.), aff'd, 547 F.2d 1158 (3d Cir. 1976); see *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977); *American Roller Co. v. Budinger*, 513 F.2d 982 (3d Cir. 1975); *Richardson v. Hamilton International Corp.*, 469 F.2d 1382 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953). The Third Circuit has stressed the important function trial courts must play in protecting the proceedings in our courts from even the appearance of impropriety:

> Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar. *The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may dis-*

---

1. Plaintiff's allegations concerning defendant's motives for filing this motion, which we characterize as allegations of possible bad faith, contributed to our decision to invite the parties to submit further affidavits on this motion. As discussed *supra,* however, plaintiff did not submit an affidavit substantiating this allegation, nor did plaintiff address this issue at oral argument, although we questioned defendant's counsel concerning it. We believe that if we were to decide this motion strictly in terms of possible violations of Canon 4, it might be necessary for us to make findings in this regard. Because we decide the motion on grounds founded in Canon 9, however, and not on personal interests of Ravert founded on Canon 4, we believe that our decision is compelled regardless of defendant's motives based on the limited information before us.

*qualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.*

Richardson v. Hamilton International Corp., *supra* at 1385–86 (footnotes omitted) (emphasis supplied).

We first consider whether there is a substantial relationship between the subject matter of the former representation of Ravert by the Sherman office and their present adverse representation. At oral argument defendant contended that the mere fact that the prior representation was a personal injury action and the counterclaim in the instant action is essentially for personal injury satisfies the substantial relationship requirement. We believe that this argument sweeps too broadly. We are more concerned, however, by the similarity of the injuries alleged in the counterclaim and those sustained previously. There is a possibility that the previously sustained injuries could be raised by plaintiff as a defense to the counterclaim.[2] This raises the danger discussed in *T. C. Theatre Corp. v. Warner Bros. Pictures, supra:* "No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney." *Id.* at 269.

■ It has been observed that "the question of 'a substantial relationship' between the two matters is not one whose dimensions are delineated with mathematical precision." *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 758 (2d Cir. 1975) (Adams, J., concurring). The application of that test to the facts of this case is not an easy one: the alleged relationship in this case relates to only a part of the underlying action; Mr. Hagarty was not associated with the Sherman office at the time of the prior representation; the factual similarity of the injuries has been only sketchily developed by defendant. We believe that this case presents a very close question which we approach most cautiously in view of "our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Emle Industries, Inc. v. Glen Raven Mills, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973). Were the question of the substantial relationship the only consideration in the present motion, we would be reluctant to grant it. Nonetheless, we believe that the motion must be granted because of the appearance of impropriety that has clouded this case.

The origin of the appearance of impropriety in this case was Hagarty's revocation of his offer to withdraw from the case. Regardless of whether the Sherman office was *required* to offer to withdraw in this case, the original offer was thoroughly consistent with Canon 9 of the Code of Professional Responsibility and particularly Ethical Considerations 9 1 and 9 6 of the same Canon.[3] Revocation of the offer to withdraw, after the former client promptly requested that his former counsel act upon it, is more ambiguous. Particularly in view of the close question on the issue of substan-

---

2. Although plaintiff contended at oral argument that the injuries previously sustained by defendant and those alleged in the counterclaim do not precisely coincide, he admitted that it is impossible to foreclose the possibility that an overlap may appear. We believe it is impossible to rule out this possibility since it may prove necessary to establish the extent of prior and presently alleged injuries, as well as any potential overlap, by expert medical testimony. In an affidavit he submitted, Daniel Sherman stated that pre-existing injuries would not be raised as a defense to the counterclaim. It is possible that, if we were deciding this motion strictly on the basis of Canon 4, this might eliminate the necessity for disqualification. However, we do not believe that Sher-

man's assurance that the defense will not be pressed, coming, as it does, after the acts discussed *infra* that gave rise to the appearance of impropriety, can correct that appearance.

3. We also believe that the original offer to withdraw was consistent with dictum in cases in which the denial of motions to disqualify was affirmed but in which the court suggested that the wiser decision in the first instance would be to eschew representation against former clients. *See Akerly v. Red Barn System, Inc., supra; Silver Chrysler Plymouth v. Chrysler Motors Corp., supra* (Adams, J., concurring).

tial relationship discussed *supra,* we find that revocation of the offer to withdraw, once extended, creates an appearance of impropriety.[4] This is so even though we believe Hagarty acted in complete good faith in revoking the offer to withdraw. We believe that this is an example of the situation discussed in Ethical Consideration 9–2: "On occasion, ethical conduct of a lawyer may appear to laymen to be unethical." We believe that this taint of unethical conduct must not be allowed to cloud the eventual outcome of this case.

Furthermore, subsequent actions by Hagarty in his opposition to this motion inadvertently added to the appearance of impropriety. Regrettably, Hagarty's decision to submit the affidavit and records for *in camera* inspection added to the appearance that Ravert's prior confidences were in some secretive way being offered against him. This impression was heightened by plaintiff's counsel's refusal to make available to defendant through the discovery process all medical information pertaining to him and obtained through the Sherman office's prior representation.[5] We reiterate that we believe that Hagarty and the Sherman office acted in good faith in this matter, but we are nonetheless convinced that an appearance of impropriety has been created. We fear that public confidence in law and lawyers could be seriously eroded if Renshaw were to prevail on his underlying claim and that victory was tainted by the appearance of impropriety.

■ We are not unaware that our decision today frustrates plaintiff's ability to prosecute this case with the attorney of his choice. However, we agree with the Second Circuit that this must be a secondary consideration to "the paramount importance of 'maintaining the highest standards of professional conduct and the scrupulous administration of justice.'" *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra* at 757, *quoting Hull v. Celanese Corp.,* 513 F.2d 568, 569 (2d Cir. 1975). We believe that plaintiff will be able to secure other competent counsel to help him prosecute his case vigorously.

---

**4.** At argument plaintiff contended that the decision not to withdraw was based in part on the conditions defendant's counsel attempted to place on withdrawal in his letter of April 27, 1978. Even if defendant's counsel's suggestion was a factor in Hagarty's decision not to withdraw, it was not mentioned in Hagarty's letter of May 10, 1978, and we do not believe that raising that argument at this point can remove the appearance of impropriety discussed *infra.*

**5.** In his memorandum in opposition to defendant's motion to compel discovery, plaintiff advances no reasons why defendant is not entitled to the information he requested that plaintiff's counsel obtained as a result of the prior representation. Defendant's request seems consistent with the spirit of Ethical Consideration 4–6. Therefore, even if we were to compel the production of the discovery sought, we do not believe that this could cure the appearance of impropriety created by the failure of plaintiff's counsel to deliver the material voluntarily to defendant.

We note that immediately prior to oral argument plaintiff's counsel agreed to make available to defendant's counsel all material submitted for *in camera* inspection.