Maurice L. DAVIS, Plaintiff,

v.

John STAMLER, State of New Jersey, the Supreme Court of New Jersey, and V. William DiBuono, Defendants.

Civ. No. 80–1633.

United States District Court, D. New Jersey.

July 30, 1980.

Robert T. Pickett, Newark, N. J., for plaintiff.

George Perselay, Brian W. Fahey, Elizabeth, N. J., for defendant John Stamler.

OPINION

SAROKIN, District Judge.

The courts have been deluged with motions for disqualification of counsel in criminal matters where (1) counsel represents two or more defendants in the same matter; and (2) counsel represents a defendant in a matter in which a former client is among the co-defendants and, now, a third category has been added—the representation by

counsel of a defendant charged with committing a crime against a former client of such counsel. No doubt the foregoing does not represent all mathematical possibilities for such conflicts. All of the foregoing situations and the resultant motions for disqualifications can be avoided by counsel, if they would refuse engagement in matters where a potential for conflict exists. Although not always, such potential is usually apparent from the very first interview.

In some instances, counsel who have guided several persons through pre-indictment stages find themselves in a position of potential conflict when indictments are returned against two or more of such clients. However, it is a rare circumstance when such conflict cannot be foreseen.

The determination of motions to compel disqualification requires a careful balancing by the court of the defendant's right to the choice of counsel with the ethical problems created. However, no such delicate balance is required by the attorney whose services are sought. He or she can avoid situations creating actual, potential, or the appearance of conflict merely by declining to represent one or more clients under such circumstances.

One's head may be turned by the entreaties of a client insisting that counsel whose services are sought is the one and only person capable of procuring an acquittal for such client or clients. Counsel should resist such praise and flattery and avoid the problem from the outset by declining to accept such representation where there is actual, potential, or the appearance of conflict.

There, indeed, may be some instances where the involvement of counsel over an extended period of time may make it impractical to substitute new and unfamiliar counsel. However, that is the exception rather than the rule. In most instances, new counsel can be brought into a matter and adequately represent the interests of the accused. More than one person is competent to perform that function.

Since counsel has not voluntarily withdrawn, this matter requires the Court to balance a criminal defendant's right to choose particular counsel with the requirement imposed on such counsel to maintain the highest ethical standards of professional responsibility. The issue is whether an attorney representing a defendant charged with a crime should be disqualified because the attorney formerly represented the alleged victim of such crime.

Plaintiff Davis was president of the board of trustees of the Industry Community Center (ICC) from 1972 until his resignation at the end of May 1977. Mr. Davis is presently a criminal defendant by virtue of two indictments which were returned against him alleging conversion of ICC's corporate assets and obtaining ICC's money or other property by false pretenses during the period of January of 1975 through May of 1976. Shortly after the first indictment was handed down in November of 1978, Mr. Davis engaged Mr. Robert T. Pickett, Esq., to represent him in the criminal matter.

Prior thereto, Mr. Pickett had been retained as counsel to ICC in August of 1976, to represent ICC in civil matters unrelated to the subject matter of the indictments. When Mr. Davis orally presented to Mr. Pickett the resignation of his presidency of the board of trustees, the remaining trustees requested that Mr. Pickett serve temporarily as acting president, in addition to serving as counsel to ICC, for the limited purpose of calling meetings and maintaining minutes until a new president could be selected. Two months later, in late July, 1977, Mr. Pickett terminated his representation of ICC as counsel and his position as acting president. A year and a half later, after Mr. Davis was indicted, he retained Mr. Pickett as counsel.

The issue of Mr. Pickett's ability to represent the criminal defendant was first presented to the Superior Court of New Jersey. Cautioning Mr. Pickett not to become a witness, the trial court permitted him to continue his representation of the criminal defendant. One day prior to the scheduled oral arguments on a motion to dismiss the indictments, the State moved to disqualify Mr. Pickett. After oral arguments, the trial court ordered Mr. Pickett's

disqualification pursuant to DR5–102, DR5–105 and due to the presence of a conflict of interest. The Appellate Division of the Superior Court of New Jersey affirmed the disqualification "solely because of the probability that counsel may be subpoenaed to testify in the criminal cause. DR5–102." A petition for rehearing was denied as was a petition for certification to the Supreme Court of New Jersey.

Alleging a deprivation by the State of his constitutional right to counsel of his choice, the criminal defendant brings this cause of action under 42 U.S.C. § 1983. This Court's jurisdiction is pursuant to 28 U.S.C. § 1343(3).

The criminal defendant (plaintiff in this matter) asserts that the disqualification of Mr. Pickett was unjustified. Plaintiff contends that Mr. Pickett: knows nothing about the subject matter of the indictments except as learned through discovery; received no confidential information related to the indictment during his representation of ICC; represented ICC solely in relation to civil matters completely unrelated to the present criminal action; and did not participate in the underlying investigation of the facts which are the subject matter of the indictment of Mr. Davis. Further, plaintiff contends that Mr. Pickett, in his capacity as acting president, never discussed the propriety or impropriety of the alleged criminal activities of the plaintiff and never received any information concerning the alleged criminal activities.

The State (defendants in this matter) contends that in light of Mr. Pickett's former representation of the alleged victim and his present representation of the alleged wrongdoer, DR5–102, DR5–105(A) and the presence of a conflict of interest require that Mr. Pickett withdraw as counsel or be disqualified. The State alleges that Mr. Pickett, while in the employ of ICC, may have come into possession of information related to the criminal defendant's alleged wrongdoing and may be a witness in the criminal proceeding. An affidavit has been filed which states that Mr. Pickett, in his capacity as corporate counsel

and an officer of ICC, was "definitely present" at a meeting at which plaintiff's involvement in matters related to the charges in the indictment were discussed. It is undisputed that Mr. Pickett was not counsel to ICC or president of the board of trustees during the period of wrongdoing charged in the indictment.

The Disciplinary Rules, promulgated by the American Bar Association and adopted by the United States District Courts for the District of New Jersey pursuant to Local Rule 6, set forth the standards of professional conduct for members of the bar. It should be noted at the outset that "although the right to counsel is absolute, there is no absolute right to a particular counsel." *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3rd Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). DR5–102 and DR5–105(A) are consistent with this principle in that they provide that an attorney should withdraw as counsel or decline proffered employment under certain circumstances.

Recognizing that the roles of advocate and witness are incompatible, DR5–102 provides that:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or believes that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . . . .

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or believes that he or a lawyer in his firm may be called as witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Subsection (A) prohibits a lawyer's continued representation of his client when he "learns or [believes] that he or a lawyer in his firm ought to be. called as witness on behalf of his client." The application of this subsection depends upon whether an attorney "ought to be called as a witness on

behalf of his client." The Court of Appeals for the Third Circuit has interpreted this phrase to require the withdrawal of an attorney-witness only if he is an indispensable witness, that is, he must have "crucial information in his possession which must be divulged." *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530, 539 n.21 (3rd Cir. 1976), *cert. denied* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). See *J. D. Pflaumer, Inc. v. United States Dept. of Justice*, 465 F.Supp. 746, 747 (E.D. Pa.1979). The circuit court suggested that under this "test," an attorney-witness is not indispensable if other witnesses are available to testify as to the same information. 546 F.2d at 539 n.21.

*Universal* additionally provides that whether an attorney "ought to be called as a witness on behalf of his client" is a determination within the discretion of the attorney-witness: "[u]nder such circumstances, the attorney, or his firm, must decide whether to serve either as advocate or as a witness in a particular case." *Id.* at 538. In accord is *J. D. Pflaumer, supra*, which states that under DR5–102(A), "an attorney and his client are in the best possible position to determine whether his testimony is in fact indispensable." Thus, they "should be permitted to present their case according to their own best judgment, and if it is their best judgment that they can get by without testimony from counsel," their decision should be respected. *Id.* at 747.

■ Mr. Pickett has expressly stated that he has no intention of appearing as a witness for his client. He has repeatedly insisted that, apart from information gained through the discovery process, he possesses no "crucial information" which would classify him as an indispensable witness on behalf of his client. His client, the plaintiff herein, concurs. Mr. Pickett's position is corroborated by testimony elicited at the State court hearing, the hearing before this Court, and the absence of contradictory facts. In view of Mr. Pickett's determination not to testify on behalf of his client, defendants' claim to disqualify Mr. Pickett on the basis of DR5–102(A) must fail.

Such conclusion is supported by the Third Circuit decision in *Kroungold v. Triester*, 521 F.2d 763 (3rd Cir. 1975). That case held that the district court did not abuse its discretion in denying a motion to disqualify under DR5–102(A) where the plaintiff's counsel expressly stated that he had no intention of calling his law partner as a witness on behalf of his client. *Id.* at 766. The court of appeals concluded that, under such circumstances, DR5–102(A) is "without impact." *Id.*

DR5–102(B) applies to an attorney, or a lawyer in his firm, who learns or believes that he may be called as an adverse witness. The representation, however, need not terminate "until it is apparent that his testimony is or may be prejudicial to his client." The attorney for the State charged with the trial of the criminal defendant (plaintiff in this matter) stated in a sworn affidavit to this Court that "although Mr. Robert T. Pickett, Esq., is a potential witness in these criminal proceedings, considering the present facts at my disposal, I do not intend to call Mr. Pickett as a State's witness." Thus, because Mr. Pickett has no grounds to "believe" that the State intends to call him as a witness adverse to his client, DR5–102(B) cannot serve to disqualify him.

■ The mere allegation that Mr. Pickett "is a potential witness" without more, is insufficient to disqualify him under DR5–102(B). See *Harrison v. Coca-Cola Bottling Co.*, 428 F.Supp. 149, 152 (M.D.Pa.1977). In *Kroungold, supra*, the defendants announced their intention to call as a witness for the defense the law partner of the attorney for the plaintiff-client, suggesting that his testimony "may prejudice" the plaintiff-client. The district court's denial of the motion to disqualify opposing counsel under DR5–102(B) was affirmed by the Court of Appeals for the Third Circuit. The basis of the affirmance was the defendants' failure to state that the testimony "[would] be prejudicial to the [client]" and to "specify in what respect the [attorney's] testimony 'may prejudice his client.'" *Id.* at 766. Thus, the intent to call the plain-

tiff-client's attorney's law partner as an adverse witness, coupled with the mere suggestion that his testimony "may prejudice" the plaintiff-client, was insufficient to support a disqualification under DR5-102(B).

The District Court for the Eastern District of Pennsylvania in *Freeman v. Kulicke & Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D.Pa.1978), held, after discussing the *Kroungold* decision, that "the moving party bears the burden of demonstrating specifically how and as to what issues in the case the prejudice will occur and that the likelihood of prejudice occurring is substantial." *Id.* at 978. Defendants in the case *sub judice,* by merely alleging Mr. Pickett to be a "potential witness" have not demonstrated how Mr. Pickett's projected testimony would or may be prejudicial to his client and have not specified in what respect the prejudice would occur. Having failed to meet the burden required by DR5-102(B), the subsection does not mandate the disqualification of Mr. Pickett as counsel to the plaintiff.

Defendants also seek to disqualify Mr. Pickett based upon the alleged conflict of interest arising out of his former representation of the alleged victim, ICC, and his present representation of the alleged wrongdoer. Such sanction is appropriate "whenever the subject matter of the second representation is 'so closely connected with the subject matter of the earlier representation that confidences *might* be involved.'" *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385 (3rd Cir. 1972) (quoting ABA Informal Opinion No. 1233 (1972)) (emphasis supplied). See *American Roller Co. v. Budinger*, 513 F.2d 982, 984 (3rd Cir. 1975); *Renshaw v. Ravert*, 460 F.Supp. 1089, 1092 (E.D.Pa.1978); *Baglini v. Pullman, Inc.*, 412 F.Supp. 1060, 1064 (E.D.Pa.1976), *aff'd,* 574 F.2d 1158 (3rd Cir. 1978). This is usually referred to as the "substantial relationship" test. It is also well established that "a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Richardson, supra,* 469 F.2d at 1385–86. See *United States v. Miller*, 624 F.2d 1198, 1202 (3rd Cir. 1980);

*American Roller Co., supra,* 513 F.2d at 984; *Renshaw, supra,* 460 F.Supp. at 1092; *Baglini, supra,* 412 F.Supp. at 1064.

Canon 4, which underlies the "substantial relationship" test, provides that "[a] lawyer should preserve the confidences and secrets of a client." Such obligation continues beyond the termination of the attorney's employment. Under this test defendants need not show that Mr. Pickett, did in fact obtain information in the course of the previous representation which is to be used in the present representation; they need only show that Mr. Pickett "might" have acquired substantially related material. *Richardson, supra,* 469 F.2d at 1385. Although denied by Mr. Pickett, defendants have produced an affidavit stating that plaintiff's involvement in matters related to the charges in the indictment were discussed at an ICC meeting at which Mr. Pickett was present in his capacity as counsel to ICC and as a corporate officer. Thus, defendants have made the requisite showing that Mr. Pickett, through his prior representation of ICC, might have obtained information substantially related to the present representation. Accordingly, to allow Mr. Pickett to continue as counsel to the plaintiff places him potentially in a position to breach confidences owed to ICC in violation of Canon 5.

To prevent the erosion of public confidence in the legal system and the legal profession, "a court may disqualify an attorney for . . . failing to avoid the appearance of impropriety." *Richardson, supra,* 469 F.2d at 1385–86. This standard in effect enforces Canon 9 which provides that "[a] lawyer should avoid even the appearance of professional impropriety." Most of the cases construing this standard for disqualification are civil cases whereas the present case concerns a criminal prosecution. The plaintiff's liberty is in issue, and plaintiff's choice of counsel, therefore, is entitled to greater weight. The right to choice of counsel, however, even in a criminal context, may be overridden by the need to maintain high standards of professional

conduct. A recent Third Circuit decision affirmed a district court's order disqualifying a criminal defendant's attorney on the basis of an appearance of professional impropriety. The appellate court reasoned that disqualification was proper where "an informed and concerned private citizen could conclude that [the attorney's] appearance on behalf of [the criminal defendant] involved a conflict of interest . . . ." *United States v. Miller, supra,* 624 F.2d 1198 at 1202.

■ Accordingly, in view of Mr. Pickett's former representation of the alleged victim; his present representation of the alleged wrongdoer who was the president of the victim, while Mr. Pickett was counsel to the victim; and the sworn affidavit stating that Mr. Pickett acquired information concerning the criminal indictment in his capacity as counsel to the alleged victim, it appears that Mr. Pickett has placed himself in the untenable position of serving conflicting loyalties. The result is the appearance of professional impropriety.

Given that Mr. Pickett during the prior representation might have obtained information substantially related to the present representation, coupled with the appearance of impropriety which clouds the case, Mr. Pickett is disqualified from representing the criminal defendant. The Court so concludes even if the sole disputed fact—as to Mr. Pickett's presence at an ICC meeting wherein the Davis matter was discussed—was resolved as he contends. In all other respects, the facts referred to hereinabove are undisputed based upon this Court's review of the testimony and affidavits submitted during the State court hearing and the hearing before this Court.