**COMMITTEE ON PROFESSIONAL ETHICS AND GRIEVANCES OF the VIRGIN ISLANDS BAR ASSOCIATION**

v.

**Russell B. JOHNSON,**
**Appellant.**

**No. 19169.**

United States Court of Appeals, Third Circuit.

Argued May 18, 1971.

Decided Aug. 2, 1971.

Robert Zimmerman, Christiansted St. Croix, V. I., for appellant.

William Kanter (L. Patrick Gray, III, Asst. Atty. Gen., Robert M. Carney, U. S. Atty., Morton Hollander, Atty., Department of Justice, Washington, D.C., on the brief), for appellee.

Before GANEY, SEITZ and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a judgment and order of the District Court of the Virgin Islands suspending respondent Johnson from the practice of law for twelve months. Only the basic facts leading to the disbarment proceedings need be recited. On March 9, 1968, Laura Cutchin requested and empowered respondent, her lawyer, to solicit offers for approximately 42 acres of land on St. Croix, United States Virgin Islands, which she wanted to sell. Heeding respondent's advice, his law clerk, Neil Ward, along with several partners other than respondent, made an offer of $3,-000 per acre which respondent communi-

cated to Mrs. Cutchin on April 24, 1968. A few days earlier respondent had been approached by Richardson and Santana, who were also interested in the land. On their behalf, respondent submitted an offer of $2,800 per acre to Mrs. Cutchin on April 25, 1968. Absent from this offer was any provision to set aside an acre for the owner's brother, as Mrs. Cutchin had previously stipulated was a necessary condition of sale. Respondent did not disclose Ward's offer to Richardson and Santana. On May 3, 1968, Mrs. Cutchin cashed the earnest money deposit submitted by Ward. Subsequently, respondent notified Richardson and Santana that Mrs. Cutchin had rejected their offer. After this rejection, Richardson told respondent to give Mrs. Cutchin whatever she wanted but was unable for several weeks thereafter to ascertain from respondent the status of the transaction. In late May or early June 1968, respondent disclosed to Richardson that the property had been sold to another party, but did not reveal the identity of the buyers. On or before May 14, 1968, respondent asked Ward if he could become a part owner of the property. On May 23, 1968, Ward executed a document in which he stated that he was holding title to the property in question as " * * * a trustee for the use of Russell B. Johnson as to a one-half interest in said parcel described hereinabove and that I hold title to the remaining one-half interest for the use and benefit of my wife, Nora P. Ward."

Santana filed a complaint with the Committee on Professional Ethics and Grievances of the Virgin Islands Bar Association pursuant to Rule 57(b) of the Rules of the District Court of the Virgin Islands, which provides that "complaints of improper or unethical conduct on the part of a member of the Virgin Islands Bar made by any * * * person, shall be referred to the Committee on Professional Ethics and Grievances of the Virgin Islands Bar, and shall be investigated by the said Committee * * * ", 5 V.I.Code Ann. 334 (App. V 1966). In accordance with

other provisions of the rules,[1] a formal hearing was held on June 6, 1969, before the Committee, which subsequently released a report making the following conclusions of law:

1. An attorney-client relationship existed on or about April 24, 1968, between Russell B. Johnson and H. J. Richardson and Cruz Santana.

2. Russell B. Johnson breached the Canons of Professional Ethics adopted by the American Bar Association, to wit: Canon Six (6), by his failure to disclose to his clients (H. J. Richardson and Cruz Santana) that on the same day, April 24, 1968, he had solicited an offer from his law clerk for the purchase of the real property on St. Croix and on April 24, 1968 had forwarded to Mrs. Cutchin the offer to purchase, supported by a check as earnest money, and a contract to purchase signed by Neil J. Ward.

The Committee recommended that formal charges be filed with the Judge of the district court against respondent for "improper and unethical professional conduct." Subsequently, a complaint was filed by the Committee with the district court [2] charging that:

3. Respondent, while acting in the capacity of an attorney-at-law and as an officer of all the Courts of this Territory by virtue of the authority conferred upon him by law, and while being in duty bound under the laws of this Territory and his oath of office to demean himself honestly in the practice of law and to discharge his duty to his clients to the best of his ability, has been guilty of unethical and dishonorable conduct as an attorney by unethically misrepresenting essential facts and failing to disclose essential facts in a real estate transaction to his clients, H. J. Richardson and Cruz Santana, concerning the purchase of land in St. Croix.

4. The actions and conduct of the respondent, as set forth in paragraph 3 supra, constitute unethical and dishonorable conduct on the part of respondent, in violation of the Canons of Professional Ethics adopted by the American Bar Association, by reason of which his license to practice law in the Territory of the Virgin Islands should be revoked and cancelled.[3]

After trial, the district court filed a Memorandum Opinion on June 9, 1970, and entered final judgment against respondent on June 12, 1970.

The district court based its decision on at least two and possibly three grounds. The court clearly held that (1) respondent violated the duties he owed his client, Mrs. Cutchin, as her attorney, and that (2) even if respondent did not represent Richardson-Santana as their attorney, he nevertheless violated duties he owed them as parties. Appellee contends that the court also found

1. Rule 57(c) provides that "the report by the Committee on Professional Ethics and Grievances of the result of its investigation, together with its findings and recommendations as to each charge of improper or unethical conduct, shall be submitted to the District Court. If the report recommends disciplinary action of any kind, then a complaint shall be filed therewith against the accused. Such complaint shall set forth the specific facts constituting the alleged improper or unethical conduct, and a copy thereof shall be served upon the accused member, who shall have the right to file an answer. The Committee on Professional Ethics and Grievances of the Virgin Islands Bar shall appoint one or more of its members to present the complaint and the evidence supporting it to the court. After hearing, the court shall enter such judgment as the facts warrant." Rule 57, 5 V.I.Code Ann. 334–35 (App. V, 1966). See Committee on Professional Ethics and Grievances of Virgin Islands Bar v. Christian, 191 F.Supp. 87 (D.V.I.1961).

2. Section 441 of the Virgin Islands Code grants jurisdiction to the district court over the discipline of members of the Bar. 4 V.I.Code Ann. § 441 (1967).

3. Rule 57(a) of the Rules of the District Court stipulates that the Canons of Professional Ethics adopted by the American Bar Association, constitute the code of ethics to be followed by the members of the Virgin Islands Bar." 5 V.I.Code Ann. 334 (App. V, 1966).

that since Johnson intentionally misled Richardson-Santana into believing he was their attorney, Johnson had a duty to deal with them candidly and held him accountable as if they were his clients.

The common weakness of all of these grounds is that respondent was not given proper notice that these charges would form the basis of the court's decision to disbar him. This failure constituted a violation of respondent's right to due process guaranteed by the fifth amendment.

For example, the assertion that respondent violated duties owed to his client, Mrs. Cutchin, as set forth in Canon 6 of the Canons of Ethics of the American Bar Association[4] was nowhere mentioned in the complaint. The only indication the court gave that it was concerned about this relationship came at the close of two days of proceedings when the court stated:

The third point, it is freely admitted that an attorney-client relationship existed between Mr. Johnson and Mrs. Cutchin. I don't think there has been any doubt about that. Did the attorney breach that relationship? If so, in what way and on what evidence do you rely to either support or defeat that? (N.T. 258.)

We think that this situation is controlled by the Supreme Court's opinion in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). In that case the original complaint charged that the petitioner was guilty of *"soliciting FELA plaintiffs as clients through an agent, Michael Orlando. At the hearings which followed, both Orlando and

petitioner testified that Orlando did not solicit clients for petitioner but merely *investigated* FELA cases for him." *Id.* at 546, 88 S.Ct. at 1224. After hearing this testimony, the Board added a new charge against petitioner on the third day of hearings "based on his hiring Orlando to *investigate* Orlando's own employer." *Id.* The United States Court of Appeals disbarred petitioner on the basis of this latter charge. The Supreme Court reversed, stating,

In the present case petitioner had no notice that his employment of Orlando would be considered a disbarment offense until *after* both he and Orlando had testified at length on all the material facts pertaining to this phase of the case. As Judge Edwards, dissenting below, said, "Such procedural violation of due process would never pass muster in any normal civil or criminal litigation." 370 F.2d 447, at 462.

These are adversary proceedings of a quasi-criminal nature. Cf. In re Gault, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

How the charge would have been met had it been originally included in those leveled against petitioner by the Ohio Board of Commissioners on Grievances and Discipline no one

---

4. Canon 6 states that:

It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer repre-

sents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.

knows. *Id.* at 550–551, 88 S.Ct. at 1226.

■■ During the two days of testimony prior to the judge's statement that he was interested in whether there had been a breach of defendant's duty to his client, Mrs. Cutchin, respondent testified at length as to the material facts concerning the relationship between himself and Mrs. Cutchin. We need not speculate as to how respondent would have altered the presentation of his case if he had been originally charged with this breach.[5] It is enough to observe that the proceedings became a trap when the first warning of the charges came towards the end of the trial, at the conclusion of the testimony of respondent and his primary witness, Mr. Ward. Due process contemplates notice which gives a party adequate opportunity to prepare his case. In these circumstances, respondent was entitled to know the exact nature of the charges against him before the commencement of proceedings. In re Ruffalo, 390 U.S. 544, 550, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968); *see also* Theard v. United States, 354 U.S. 278, 282, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); *cf.* Birkenfield v. United States, 369 F.2d 491, 493–494 (3rd Cir. 1966).

■ Likewise, we think that considerations of due process as outlined in In re Ruffalo invalidate the court's decision that respondent violated Canon 9 of the Canons of Ethics of the American Bar Association in that he misled parties not represented by counsel.[6] This charge was not contained in the complaint; nor was any other warning given to respondent that he would have to answer to such a charge. Respondent based his defense on the proposition that an attorney-client relationship between him and Richardson and Santana never came into being. He was not prepared, and did *not attempt in the presentation of his case, to combat the allegation that he misled parties not represented by counsel.* The requirements of due process are not fulfilled when a party is placed in such a position.

■■ The third ground on which appellee claims the court rested its decision is that respondent intentionally misled Richardson and Santana into believing he was their lawyer and that he was accountable to them "as if they were his clients." (Appellee's brief at 16.) While we do not necessarily accept this interpretation of the court's discussion at pages 22a–26a of its opinion,[7] we

---

5. In his reply brief submitted to this court, respondent claims that if had known that "the scope of the inquiry encompassed any wrong-doing that respondent may have directed toward his admitted client, Mrs. Cutchin * * * [he] would have explained, or clarified, every point raised against him in the Court's Opinion by his own testimony, exhibits, and the testimony of his client. * * *" (Reply Brief at 3.) For example, in its opinion, the court, as grounds for deciding that respondent violated duties owed to Mrs. Cutchin, found that respondent had a personal interest in the transaction at the time he submitted both offers, that he did not adequately notify Mrs. Cutchin of his interest, that he never set aside the acre for Mrs. Cutchin's brother, and that he collected a commission for the sale, despite Mrs. Cutchin's desire to avoid it. Respondent claims that he could have demonstrated that he had no personal interest in the transaction at the time he submitted both offers and at the time Mrs. Cutchin accepted Mr. Ward's offer,

that Mr. and Mrs. Cutchin were "completely aware" of his interest, that Mrs. Cutchin's brother "has not been deeded his acre" only because "he himself has declined to take it at this time," and that Mrs. Cutchin "fully expected to pay a commission if the land was sold to any buyer found by respondent." (Respondent's Reply Brief at 4–7.) It is noted that all the transcript references in appellee's letter of May 21, 1971, except for four of those on pages 4–6, were to pages of the transcript prior to the court's statement at N.T. 257–58 at the end of the second day of the trial.

6. Canon 9 states that:
It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, * * *.

7. The court never makes clear in its discussion at pages 22a–26a whether there is a third ground for its decision and if so, exactly what constitutes that ground. Without deciding whether an attorney-

find it unnecessary to do more than decide that the court did not conclude that respondent had breached an attorney-client relationship existing between him and Richardson and Santana. As previously noted, the complaint was bottomed on the theory that respondent represented Richardson and Santana as their attorney. An attorney-client relationship is one of agency and arises only when the parties have given their consent, either express or implied, to its formation. Therefore, as a necessary prelude to disbarment, it was necessary for the court to find both that an attorney-client relationship existed and that respondent violated the duties attendant upon this relationship. That the court itself recognized its obligation is demonstrated by its statement at the end of the first two days of testimony that:

"All right, because the time is short, I'm hurrying into something else, let me say some points that I want to touch upon.

"Number one, was an attorney-client relationship established between Richardson and company and Mr. Johnson? If so, on what evidence do you rely to either support or defeat that position?

"The second position is if the relationship is found to exist, in what way did the attorney breach the attorney-client relationship?

"If there is no attorney-client relationship proved with Mr. Richardson, then I think the case falls. * * * " (N.T. 257–58.)

In the discussion at pages 22a–26a, the court studiously avoids finding the requisite attorney-client relationship. In fact, the court notes that "Respondent denies the existence of the attorney-client relationship between him and Richardson-Santana and contends that there being no such relationship, he owed no duty to them and consequently breached none. In the view I take of this matter, I do not find it necessary to reach this issue." If there was a third ground for decision, respondent received no warning of it.

The lack of adequate notice of any of the charges upon which the court based its decision requires that we reverse the judgment of the district court entered June 12, 1970, and remand for further proceedings consistent with this opinion.[8]

client relationship was formed, the court stated that respondent knew that Richardson and Santana thought that such a relationship existed and that respondent intentionally misled them. The court concluded that respondent's conduct was not "such as would be calculated to inspire and preserve public confidence, respect and trust in the legal profession" (24a), and that respondent's conduct was "seriously at war with the lofty standard and purpose" expressed in the Preamble to the Canons of Professional Ethics, which states that:

In America, where the stability of Courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing Justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the Republic, to a great extent, depends upon our maintenance of Justice pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men.

No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted by the American Bar Association as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned.

8. Nothing herein is intended to pass on the right of petitioner to initiate other Committee proceedings. See Rule 57 of the Rules of the District Court of the Virgin Islands, 5 V.I.Code Ann. (App. V, 1966—at 334–35 of Vol. 2).