In re CHANTILLY CONSTRUCTION
CORPORATION, Debtor.

CHANTILLY CONSTRUCTION
CORPORATION, Plaintiff,

v.

JOHN DRIGGS COMPANY, INC. and
The Aetna Casualty and Surety
Company, Defendants.

Bankruptcy No. 82–01571–A.
Adv. No. 83–0303–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

April 25, 1984.

Robert G. Watt, David C. Romm, Watt, Tieder, Killian & Hoffer, McLean, Va., for debtor.

**468**

H. Bradley Evans, Jr., Thomas & Fiske, Alexandria, Va., Special Counsel to defendant, John Driggs Co., Inc.

John F. Mardula, Vienna, Va., for John Driggs Company, Inc. and The Aetna Cas. and Sur. Co.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter arises upon the motion of Chantilly Construction Corporation ("Chantilly"), debtor herein, to disqualify the counsel of defendant, John Driggs Company, Inc. ("Driggs"), in the underlying adversary proceeding. Chantilly filed its motion to disqualify the law firm of Lewis, Mitchell & Moore ("Lewis, Mitchell") on August 26, 1983. The Court heard oral argument and entertained several pre- and post-hearing briefs on the matter.

Chantilly alleged violations of Canons 4, 5 and 9 of the Virginia Code of Professional Responsibility ("the Code")[1]. On August 2, 1983, the House of Delegates of the American Bar Association adopted a revised code of ethics, the Rules of Professional Conduct ("the Rules"). Rule 3(G) of the Local Rules of Practice, under which this Court operates, states that "[t]he ethical standards relating to the practice of law in this Court shall be the Canons of Professional Ethics of the American Bar Association and the Virginia State Bar now in

force and as hereafter modified or supplemented."

Because the American Bar Association did not indicate the effective date for the Rules nor the applicability of the Rules to a proceeding filed after August 2, 1983 based upon events prior to that date, this Court must look to both codes of ethical conduct for guidance[2].

■ A motion for the disqualification of counsel is one which requires close inspection. A consideration involving the disqualification of counsel requires that the court balance several important factors: the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system. *See Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *United States v. Smith*, 653 F.2d 126, 128 (4th Cir.1981); *In re Asbestos Cases*, 514 F.Supp. 914, 925 (E.D.Va.1981) (dicta). Further complicating a court's task is the possibility of a disqualification motion being misused for the obvious tactical advantages. *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F.Supp. 326, 331 (D.D.C.1980); *Ross v. Great Atlantic & Pacific Tea Co.*, 447 F.Supp. 406, 409–10 (S.D.N.Y.1978). As a result of the above considerations, a high standard of proof is required of the party seeking disqualifica-

---

1. Canon 4 of the Virginia Code of Professional Responsibility ("the Code") requires an attorney to preserve the confidences and secrets of his client. The Code defines "confidence" as information protected by the attorney-client privilege under law. DR 4–101(A). A "secret" is information gained in the attorney-client relationship that either the client had requested not be disclosed or the disclosure of which would be embarrassing or detrimental to the client. *Id.* Canon 5 of the Code mandates the exercise of independent professional judgment by the attorney on behalf of his client. Canon 9 of the Code forbids even the appearance of professional impropriety.

2. Although the Code and the Rules of Professional Conduct ("the Rules") remain very similar, there are some differences between the two relevant to the case *sub judice.* Most important-

ly, there is no counterpart to Canon 9 of the Code in the new Rules. The comment to Rule 1.10, which is intended as a tool for guidance rather than as law, discusses problems with applying Canon 9 of the Code, specifically regarding imputing the disqualification of an attorney to an entire law firm.

Secondly, the Rules contain Rule 1.9, Conflict of Interest: Former client, for which the Code has no counterpart. Rule 1.9 addresses the conflict of interests in a situation in which an attorney represents a client in a matter substantially related to a matter in which the attorney represented a former client. Additionally, Rule 1.6 of the new Rules, Confidentiality of Information, prohibits an attorney from revealing information relating to the representation of a client. Rule 1.6 is theoretically much broader than the confidences and secrets protected under Canon 4 of the Code. *See* footnote 1, *supra.*

tion. *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir. 1978).

■ An attorney-client relationship must exist and must be proven by the party supporting a motion to disqualify in order for the motion to be successful. *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 608 (8th Cir.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir.), *reh. denied,* 536 F.2d 1025 (5th Cir.1976) (per curiam). *Premium Products Sales Corp. v. Chipwich, Inc.,* 539 F.Supp. 427, 433 (S.D.N.Y. 1982). Both parties must consent to the creation of the relationship. This consent may be either expressed or implied by the conduct of the parties. *Committee on Professional Ethics & Grievances v. Johnson,* 447 F.2d 169, 174 (3rd Cir.1971).

■ Having determined that an attorney-client relationship exists or existed between an attorney and a former client, a court must make additional inquiries relevant to a disqualification motion. *See Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 225 (7th Cir.1978). The matters on which the attorney represents, or represented, the clients must be substantially related. *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953). For a disqualification motion to be granted, the issues involved have been described as necessarily being "identical" or "essentially the same." *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir.1978); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 501 F.Supp. 326, 328–29 (D.D.C.1980). Once an attorney-client relationship is established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter. *Westinghouse Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 224 n. 3 (7th Cir.1978); *Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir.1977); *see In re Asbestos Cases,* 514 F.Supp. 914, 921 (E.D.Va. 1981).

As with other matters involving conflicting policies, each of great importance, a disqualification motion must be decided on a case-by-case basis. *See In re Asbestos Cases,* 514 F.Supp. 914, 924 (E.D.Va.1981). Although the foregoing considerations can afford a court some guidance, there is no rigid standard that can be applied.

The case under consideration is complicated by the history of dealings between the parties involved. The following represents the Court's findings of fact relevant to the issue at hand. In 1978, Chantilly retained Daniel J. Kraftson ("Kraftson"), an attorney with Lewis, Mitchell, to represent Chantilly in a claim arising under a construction contract. Chantilly later retained Kraftson as its registered agent commencing in 1980 and ending in August 1983. Throughout that period, Chantilly occasionally contacted Kraftson seeking assistance. The evidence adduced at trial also indicates that Chantilly turned to other law firms and other attorneys for assistance on different matters during that same time period.

On December 1, 1977, Driggs, as prime contractor, entered into a construction contract ("prime contract") with the Virginia Department of Highways and Transportation ("VDH & T") for work to be performed on a section of Interstate Highway I–66 ("I–66"). Four days later, Driggs, as the prime contractor, contracted with Chantilly, as subcontractor to construct a box culvert pursuant to the prime contract. Due to delays apparently caused in part by VDH & T, the subcontractors, and ultimately Driggs, incurred additional expense and time in completing the work. Driggs and the subcontractors, including Chantilly, entered into a Release, Liquidation and Consolidated Claim Agreement ("Liquidation Agreement") on March 25, 1982 in an attempt to pursue their claims against VDH & T.

Prior to a meeting with VDH & T, representatives of Chantilly met with Kraftson on January 3, 1983 to inquire whether Lewis, Mitchell would replace Chantilly's prior counsel. Chantilly's prior counsel had withdrawn from further representation of

Chantilly because of the latter's filing a petition of reorganization in December 1982 under Chapter 11 of the Bankruptcy Reform Act of 1978. During the January 3, 1983 meeting with Kraftson, the representatives of the debtor were informed that Lewis, Mitchell already represented Driggs on the I–66 matter and could not represent Chantilly. After hearing this statement, Michael Richardson ("Richardson"), a vice-president with Chantilly, advised his associate at the meeting, William Gentry ("Gentry"), president of the debtor, not to discuss Chantilly's I–66 claim because Lewis, Mitchell was representing Driggs.

After failing to get the debtor's former attorney to attend the meeting with VDH & T, Gentry, as president of the debtor, represented Chantilly's interest. During the meeting between Driggs, the subcontractors and VDH & T, VDH & T discovered some problems with Chantilly's claim and subsequently informed Driggs, as the prime contractor, of these problems. As a result of this communication, Richardson attended a two-day meeting with a member of Lewis, Mitchell and a representative of Driggs to solve whatever problems might exist with Chantilly's claim. At this meeting, held January 19–20, 1983, the attorney for Driggs stated he was there as a representative of Driggs at Driggs' request.

The cooperative effort of Chantilly and Driggs resulted in a revised claim which Driggs forwarded to VDH & T. Driggs and VDH & T settled the consolidated claim in early February 1983 for $4,900,-000.00. Chantilly's share of $2,440.00 was substantially less than the debtor's claim of $341,842.00. Chantilly's disappointed expectations and perceived failure of Driggs to represent the debtor's best interests are the foundation of the adversary proceeding underlying Chantilly's motion to disqualify.

The Court finds that, despite the number of dealings between the debtor and Lewis, Mitchell, there are only four instances when an attorney-client relationship might have arisen between the debtor and the law firm. Those four contacts are: the undisputed prior attorney-client relationship commencing in 1979; the January 3, 1983 meeting between Kraftson and representatives of Chantilly; the January 19–20, 1983 meetings between representatives of Chantilly, Driggs and Lewis, Mitchell; and the execution by the parties of the liquidation agreement. We will address each contact seriatim.

Daniel Kraftson of Lewis, Mitchell represented Chantilly on less than a half dozen matters over a period in excess of three-and-a-half years. These matters included a contract claim involving work at Fort Belvoir, Virginia, in 1979 and a March 1981 contract for the construction by Chantilly, as prime contractor, of a traffic control building on Columbia Pike. Additionally, Kraftson was involved with Chantilly claims against VDH & T arising from road repair projects awarded in 1981. One of the projects was on Interstate Highway I–495 in Northern Virginia and the other involved work performed in Norfolk, Virginia. Kraftson also acted as registered agent for Chantilly from mid-1980 to August 1983.

■ As a construction company that does a great deal of road construction, Chantilly must necessarily deal with VDH & T either directly or in a subcontractor capacity. Thus, it is not surprising that a party with which Chantilly would be having contract disputes would be VDH & T. The disputes, however, in which Lewis, Mitchell was involved arose from distinct and separate contracts than that with which the Court now deals. The relationship between issues in the prior and present cases must be "patently clear" for disqualification. *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739–40 (2d Cir.1978). Neither the evidence at trial nor the debtor's otherwise thorough supporting briefs show the substantial relationship between issues which must exist for the Court to grant debtor's disqualification motion.

■ Kraftson may have learned something of the personality of the debtor's officers and employees during this prior representation. Such a familiarity with the workings of a corporation or the personali-

ty of its representatives, however, is totally insufficient as a basis for disqualification. *International Paper Co. v. Lloyd Manufacturing Co.*, 555 F.Supp. 125, 132 (N.D. Ill., E.D.1982). Certainly, the evidence does not indicate that it "can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject" of the present litigation. *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 269 (S.D.N.Y.1953). Thus, Lewis, Mitchell's prior representation of Chantilly in unrelated matters is not an adequate foundation for debtor's motion. *See* Rule 1.9, Rules of Professional Conduct.

■ Additionally, the fact that Kraftson acted as registered agent for Chantilly does not support debtor's motion. A registered agent may be any person over eighteen who is either an officer or director of the corporation or a member of the Virginia Bar or an appropriately registered professional corporation. 1950 Code of Virginia §§ 13.1–9(b), (b1) (1978 Repl. vol.). As a practical matter, the single function of a registered agent is to act as the recipient of any "process, notice, order or demand required or permitted by law to be served upon the corporation...." 1950 Code of Virginia § 13.1–11 (1978 Repl. vol.). Such a function does not constitute the establishment of an attorney-client relationship. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1316–17 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978).

■ Neither the January 3, 1983 meeting nor the January 19–20, 1983 meetings between representatives of Lewis, Mitchell and Chantilly were contacts establishing an attorney-client relationship. During the first meeting, Kraftson made full disclosure and, thereby, made the law firm's position perfectly clear to the president and a vice-president of the debtor. Because Lewis, Mitchell already represented Driggs on the I–66 matter, the law firm could not, and would not, represent Chantilly in the same matter. Chantilly's understanding of Lewis, Mitchell's position is beyond refuta-

tion. Both the testimony of the debtor's own witness, Michael Richardson, and a letter signed by Richardson in April 1983 illustrate that Chantilly was aware of Lewis, Mitchell's refusal to represent Chantilly on the I–66 matter.

Richardson's understanding of the law firm's position, also evidenced by his warning to Chantilly's president at the time of the January 3, 1983 meeting, necessarily would eliminate any reasonable belief that Lewis, Mitchell represented Chantilly as a result of the January 19–20, 1983 meeting. Additionally, evidence adduced at trial indicated that Richardson was informed that the law firm's prior position remained static and that Lewis, Mitchell attended the meeting at the request of its client, Driggs. This evidence indicates no attorney-client relationship existed between Lewis, Mitchell and Chantilly.

The final contact upon which the debtor claims an attorney-client relationship was established was the execution of the March 1982 Liquidation Agreement. Chantilly asserts that the provisions requiring a pro rata payment to Lewis, Mitchell by Driggs and all the shareholders and requiring the presentment and litigation of "all matters regarding entitlement to damages" by the "attorneys representing Driggs" constitute representation of Chantilly by Lewis, Mitchell.

■ The Liquidation Agreement was entered into by Driggs and all of the subcontractors on the I–66 project. Only in one instance, not in the matter *sub judice*, was the agreement modified in any way. The essence of the agreement was that of a cooperative effort between Driggs and the subcontractors. By executing the document, Driggs agreed to cooperate in the "preparation and prosecution of subcontractors' claims...." Driggs also agreed to present all known claims to VDH & T. Indicative of this spirit of cooperation, the parties to the liquidation agreement consented to produce documents and/or witnesses in support of their respective claims. Additionally, the parties agreed to pay any consultants or experts, including attorneys,

retained by Driggs. It is well established, however, that the payment or nonpayment of fees does not establish the existence of an attorney-client relationship. *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *International Paper Co. v. Lloyd Manufacturing Co.*, 555 F.Supp. 125, 132 (N.D.Ill., E.D.1982).

The crux of the matter is contained in paragraph nine (9) of the liquidation agreement. In that paragraph, the parties agree that the "attorneys representing Driggs" will handle the matters regarding the entitlement of the parties to damages based on the overall consolidated claim. Each subcontractor was responsible for matters concerning the amount of damages incurred by each subcontractor under their own individual claim. This situation is very much like a lead and secondary counsel arrangement. In such a situation, lead counsel presents the issue common to all parties, in this case whether the parties were entitled to damages due to VDH & T's delay. Both Chantilly and Driggs indicated at trial that such an arrangement is common in the construction industry. In this case, the party having direct privity of contract with VDH & T, Driggs, presented the entitlement issue common to all claimants as well as its own individual damage claim.

Driggs encouraged the subcontractors to bring their own counsel to the hearing before the VDH & T. In fact, the president of the debtor attempted to bring debtor's former counsel, who had prepared Chantilly's initial claim, to the meeting. Additionally, representatives of the debtor consulted with their present counsel before the January 19–20, 1983 meeting with Lewis, Mitchell and Driggs. Considering the document as a whole as well as the practice of the construction industry, this Court cannot find that an attorney-client relationship was created by the execution of the March 1982 Release, Liquidation, and Consolidated Claim Agreement. Furthermore, this Court holds that at no time has Lewis,

Mitchell & Moore represented the debtor in the I–66 matter.

Previously, the Court found that Lewis, Mitchell represented the debtor in other matters and, therefore, it is incumbent upon us that we address the duty that an attorney owes its former client. The new Rules contain a provision which was not a part of the former Code of Ethics, Rule 1.9, Conflict of Interest: Former Client. Rule 1.9 prohibits representation of a client in a matter substantially related to the former matter where the present client's interests are "materially adverse" to the former client. Rule 1.9(a), Rules of Professional Conduct. In our previous discussion of Lewis, Mitchell's prior representation of Chantilly, the Court determined that the prior and present matters relate to separate and distinct contracts and involve issues not "substantially related" to the present matter.

Rule 1.9(b) prohibits use of any information relating to the representation of the former client to the disadvantage of the former client. Rule 1.9(b), Rules of Professional Conduct. There is an irrebuttable presumption that confidential information is exchanged as a result of an attorney-client relationship. *In re Asbestos Cases*, 514 F.Supp. 914, 921 (E.D.Va.1981). The existence of an attorney-client relationship and the concomitant presumption of an exchange of confidences is not enough, however, to require disqualification. In addition to the foregoing, there must be a substantial relationship between the matters in that the information must be relevant to the pending litigation. *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978); *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 269 (S.D.N.Y.1953); *In re Buchanan*, 25 B.R. 162, 169–70 (Bkrtcy.E.D.Tenn.1982). The Court has ruled that the required substantial relationship does not exist.

The debtor also indicates that Lewis, Mitchell should be disqualified because Chantilly plans to call attorneys affiliated with the law firm as witnesses. Both the Code and the new Rules prohibit an attor-

ney acting as advocate where the attorney "is likely" or "ought" to be called as a witness. DR 5–102(A); Rule 3.7(a), Rules of Professional Conduct. The new Rules and accompanying commentary clearly indicate that this prohibition extends to instances in which an attorney is called upon to testify against his client. Rule 3.7(a), Rules of Professional Conduct. The debtor's "need" to call members of Lewis, Mitchell to testify is alleviated by the fact that the attorney's testimony will be cumulative and in some instances redundant. In every relevant instance of contact between members of Lewis, Mitchell and Chantilly, other individuals were present. These individuals include other representatives of the debtor and representatives of Driggs. Additionally, the exception to the prohibition of DR 5–102(A) and Rule 3.7(a) is the substantial hardship that would result to the client if counsel was disqualified. DR 5–102(A); DR 5–101(B)(4); Rule 3.7(a)(3). Counsel for Driggs has approximately one thousand (1,000) hours of services performed in its representation of Driggs in the I–66 matter. Any disqualification on this basis would represent an extreme hardship on Driggs. In addition to being deprived of counsel with which it has a well-founded relationship on the I–66 claim, Driggs would have the very heavy burden of educating replacement counsel on all the activity which has transpired previously.

During the hearing on debtor's motion, this Court held that it could find no instances of impropriety on the part of Lewis, Mitchell. The Court indicated, however, that it was concerned with the possibility of a spectre of impropriety tainting future proceedings. Subsequently, debtor cited a decision in this district, *In re Asbestos Cases*, 514 F.Supp. 914, 922 (E.D.Va.1981), as authority that counsel should be disqualified solely upon the appearance of impropriety prohibited by Canon 9 of the Code. Judge Clarke in the *Asbestos* opinion recognized, however, the difficulty of applying an inflexible rule of disqualification. *Id.* at 924. Each disqualification motion must be decided on a case-by-case basis. In the case *sub judice*, after thorough and careful consideration, the Court finds that no attorney-client relationship existed between Lewis, Mitchell and Chantilly on a matter substantially related to debtor's I–66 claim, a finding explicitly made, and implicitly necessary, in the *Asbestos* decision. Parenthetically, this Court recognizes the difficulty courts have had in applying Canon 9 of the Code. Additionally, the Court notes without further comment that neither Canon 9 nor a similar rule of conduct is a part of the Rules of Professional Conduct.

■ Finally, the Court turns to Driggs' motion for attorneys' fees based in part on 28 U.S.C. § 1927. Section 1927 allows assessment of costs, including attorneys' fees personally against counsel for unnecessarily and vexatiously multiplying proceedings. 28 U.S.C. § 1927. After full and complete consideration, the Court finds that Driggs' motion must be denied. Debtor raised a number of legitimate points and concerns which were born of the very involved dealings between all three of the parties concerned. The issues raised by the debtor were sufficiently substantial on their face to withstand Driggs' challenge at the time of the hearing, necessitating further review by this Court. The Court finds no vexatiousness nor unreasonableness in debtor's motion under the circumstances of this case.

In summary, based upon the foregoing, debtor's motion for disqualification is denied, as is defendant's motion for assessment of costs and attorneys' fees.

An appropriate Order will enter.